76 N.J. Super. 318 (1962)
184 A.2d 523
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH DeMARCO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1962.
Decided September 25, 1962.
*319 Before Judges PRICE, SULLIVAN and MINTZ.
Mr. Irving C. Evers (assigned counsel), argued the cause for defendant-appellant.
Mr. Anthony D. Andora, Assistant Bergen County Prosecutor, argued the cause for plaintiff-respondent (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney; Mr. Andora, on the brief).
The opinion of the court was delivered by PRICE, S.J.A.D.
Defendant was convicted of assault with intent to commit rape (N.J.S. 2A:90-2). His conviction was based on the verdict of a jury in the County Court. The sole ground on which defendant seeks reversal of the conviction is based on remarks during summation by an assistant prosecutor (other than the attorney who appeared for the State on the argument of this appeal). No objection to the remarks was made at trial by defendant's then attorney. However, it is claimed by defendant's present attorney that the remarks were so prejudicial as to constitute plain error (R.R. 1:5-1(a), 2:5), warranting reversal of his conviction.
*320 The proofs on behalf of the State were that at about 2:30 A.M. on May 16, 1961, the complaining witness, a young woman en route to her home, had stopped for refreshments at a diner following a visit at the home of a friend. She had driven to the diner in an automobile which she had parked on the adjacent public highway. The doors of the automobile were not locked. She testified that, after partaking of food she left the diner and, after driving the car a short distance towards her home, she was seized by defendant who had concealed himself on the floor in the rear of the car. She further testified that she was pricked by a knife held by defendant on the right side of her neck; that he ripped the back of her dress, addressed an obscene remark to her and seized her breast. She saw his face in the mirror. She stepped on the accelerator, swung the car to the right, flung open the car door and "threw" herself out of the car onto the street. She testified that the next thing she knew she was being given medication by a doctor at the police station.
A witness on behalf of the State, who was operating an automobile at a considerable distance behind the car of the complaining witness and in the same direction, testified that he saw "a figure come up from back of the car"; that the "figure * * * looked like a man"; that the car veered from the highway and hit a parking meter. He further testified that he saw somebody come out of the car and that on approaching the vehicle he found the complaining witness on the street in an hysterical condition. Another motorist arrived and the police were summoned. The witness later identified defendant as a person he had seen in the diner at the time the complaining witness was there.
The police officer who arrived at the scene described the hysterical condition of the complaining witness. The police found a cap on the floor of the car and a knife on the rear seat of the vehicle. Possessed of a description of the alleged assailant the police conducted an investigation at the diner and as a result thereof arrested defendant who resided in the *321 neighborhood. Defendant admitted the ownership of the cap and the possession of the knife on the night in question, but denied assaulting the complaining witness. At trial he admitted that he had been with her in the car at the time of the alleged assault but testified that he had met her outside of the diner and at his suggestion they had agreed to drive to a tavern in a neighboring town; that as they started he occupied the righthand side of the front seat of the car; that he thought the complaining witness was partially intoxicated; that she drove the car at such an excessive rate of speed that it swayed on the highway; that, concerned for his own safety, he applied his left foot to the brake and as the car slowed down he jumped out and ran away. He further testified that on entering the car with the complaining witness he had no intention of assaulting her physically and that he did not do so; that his intention was to steal a fur piece which she was wearing, and possibly some of her money, during the period he planned to be with her.
The record reveals that defendant had a criminal record. The first reference thereto was made by defendant's counsel during the selection of the jury. He next alluded to it in his opening statement to the jury in the following manner:
"In the voir dire when I questioned you as prospective jurors I suppose I have asked you to do something which some of us may feel it is almost humanly impossible to do, and that is to put aside any prejudices you may have, especially against this man. It will be brought out during the trial that the defendant did serve time in a prison for attempted rape, which is the same charge with which he is confronted here today. I think that the State will bring it out. I think that the State will harp on it. The State will seek a conviction merely on that basis because the facts as we know them are quite different than those related by the Prosecutor."
During the presentation of testimony reference to defendant's prior incarceration in prison was made both by defendant and by his counsel. It was also emphasized by defendant's counsel in summation in urging the jury not to convict defendant on "the basis of a prior conviction or convictions."
*322 During the trial defendant had been interrogated on cross-examination as follows:
"Q. So if they only were interested or if you only thought that they [the police] were interested in knowing your whereabouts, why did you think it was necessary to give a general statement about all these details?
A. Because I did not have anything to hide and because of my past experience as an ex-con, and I have been picked up and questioned, and when you are being picked up and questioned if you don't sort of give them where your activities were and where you have been after, well 
Q. What crimes were you convicted of? A. Two.
Q. What crimes? A. Attempt and of carnal abuse.
Q. By attempt, you mean attempted rape?
A. That is the same one. That was in 1943.
Q. Did you plead to that, or were you convicted?
A. I was convicted.
Q. What about the other crime? A. The other crime was brought down to assault and battery, which I received two to three years, to run with the ten to fifteen I was doing."
We turn to a consideration of the portions of the assistant prosecutor's summation on the basis of which defendant seeks reversal of his conviction. The statements were as follows:
"How do we come to conclude or infer or find the intent in the mind of this defendant?
It is true we have his past record. He is a convicted criminal, and he has previously committed similar offenses. He is an admitted rapist. From that we can infer his motive and intent, the reason why he was in the back of this automobile on the morning of May 16th, the reason why he was carrying State's exhibit which is this knife.

* * * * * * * *
The defense witness DeMarco, the defendant, the main, principal witness, this is for him playing for high stakes in this case. He is a two-time loser or, I should say, a convicted criminal for similar offenses, and don't you think it is important for him to do everything he would think humanly possible to avoid the penalty of a conviction under this crime?
Do you think he is entitled to any consideration or sympathy because he happens to be a convicted criminal?"
Defendant, on this appeal, concedes the right of the State to show defendant's prior conviction of crime for the purpose *323 of affecting his credibility (N.J.S. 2A:81-12), but contends that "plain error" exists because: (a) the assistant prosecutor's reference to defendant's criminal record during summation was designed "to prevail upon the jury to return a verdict of guilty of the crime of assault with intent to rape by relying on the admission of the prior conviction of carnal abuse as establishing the very crime with which the defendant was charged"; and (b) because of the above quoted portions of the summation in which reference was made to defendant as an "admitted rapist" and that he was "a convicted criminal for similar offenses." Defendant's brief states that because he had "admitted to one prior conviction of carnal abuse" and had testified that "another charge had been reduced to assault and battery" the "plural reference * * * to similar offenses was highly improper."
In view of defendant's own aforesaid testimony, descriptive of the crimes of which he had been convicted, we find no justification for his contention that on the basis of "plain error" we should reverse his conviction solely because, in summation, the assistant prosecutor used the words "a convicted criminal for similar offenses."
However, no justification exists (under the circumstances of this case) for the assistant prosecutor's statement in summation that from the fact that defendant was an "admitted rapist" and "a convicted criminal, * * * his motive and intent" in entering the car of the complaining witness can be gleaned. State v. Kociolek, 23 N.J. 400, 418 (1957).
The question to be resolved is whether such impropriety, under the circumstances of the instant case, warrants the application of the plain error rule (R.R. 1:5-1(a), 2:5).
Plain error has been defined as "legal impropriety affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Corby, 28 N.J. 106, 108 (1958).
*324 We are convinced that the conviction of the defendant in the instant case was completely justified by the evidence. Proof of his guilt was overwhelming; his presence in the car of the complaining witness at the time in question was conceded; his testimony offered to explain his entry into the car and his story that he intended to rob the complaining witness and not to assault her was so incredible as to warrant its rejection by the jury.
The application of the plain error rule must depend upon a consideration of the magnitude of the alleged error and of the facts of the case under scrutiny.
Initially, it is to be noted that trial counsel's failure to object to the assistant prosecutor's remarks at the time they were made permits an inference that "he did not in the atmosphere of the trial think them out of bounds." State v. Johnson, 31 N.J. 489, 511 (1960).
We not only conclude that the conviction was so completely warranted by the proofs that no justification exists for the contention that the aforesaid impropriety "possessed a clear capacity to bring about an unjust result," but we are impressed with the completeness and accuracy of the trial judge's charge to the jury in this connection. He clearly defined the respective functions of the court and jury, emphasizing that the jury must be guided by the law as pronounced by the court and must disregard observations referable thereto advanced by counsel. With equal clarity he emphasized that the proof of previous conviction of crime was admissible as an attack on credibility. The charge in this connection was sufficiently comprehensive so that in our opinion any possible harm flowing from the presently criticized remarks of the assistant prosecutor was overcome by the court's charge. State v. Buffa, 31 N.J. 378, 379 (1960).
The situation in the case at bar is far removed from what the Supreme Court found was "an aggravated appeal to prejudice" in the remarks of the assistant prosecutor in summation in the case of State v. Driver, 38 N.J. 255 (1962). It *325 bears no similarity to the existence of numerous trial errors which, as stated in State v. Orecchio, 16 N.J. 125, 134 (1954), "in their aggregate, clearly deprived the defendant of the type of trial upon which our system of criminal justice soundly insists." As stated in Johnson, supra, 31 N.J., at p. 511, our courts have not hesitated to reverse convictions where we have found that the prosecutor by overstepping the bounds of propriety "created a real danger of prejudice to the accused." We find no such situation here present. As observed in Johnson, at p. 513, "particular remarks must be appraised in the setting of the whole trial." Although the remarks of the assistant prosecutor in the case at bar were, as we have observed, improper, in "the entire context of the trial we cannot say that they constituted plain error." State v. Buffa, supra, 31 N.J., at p. 379.
The conviction of defendant is affirmed.