STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
RONALD JOHNSON, DEFENDANT-RESPONDENT.

Argued May 7, 1974—Decided July 9, 1974.

*Mr. R. Benjamin Cohen,* Assistant Prosecutor, argued the cause for plaintiff (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

*Mr. James J. Lee,* Assistant Deputy Public Defender, argued the cause for defendant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the Court was delivered by

SULLIVAN, J. Defendant was convicted of unlawful possession of heroin, a violation of *N. J. S. A.* 24:21–20, and

unlawful possession of a revolver, a violation of *N. J. S. A.* 2A:151-41. He was sentenced to a term of 3 to 5 years in State Prison for each offense, the sentences to run concurrently.

On appeal, 125 *N. J. Super.* 344, the Appellate Division unanimously: (1) upheld the trial court's interpretation of *N. J. S. A.* 2A:151-41 as prohibiting possession of a firearm without a permit in any place, public or private, subject to the exceptions specified in *N. J. S. A.* 2A:151-42; (2) rejected defendant's contention that he was prejudiced by the trial court's statement to the jury that "an indictment, far from being a mere allegation, constitutes a finding by a Grand Jury that a basis exists for subjecting the accused to a trial, to a trial before a jury such as you."; (3) found that the prosecutor's remarks during summation, referring to defendant's prior criminal convictions, did not constitute prejudicial error; (4) affirmed the conviction of unlawful possession of heroin; and (5) held that the sentences imposed were not manifestly excessive.

However, a majority of the court concluded that the conviction of unlawful possession of a revolver must be reversed because the trial court, in its charge to the jury, made unnecessary and improper reference to *N. J. S. A.* 2A:151-5 which provides for additional sentence for armed criminals, and *N. J. S. A.* 2A:151-8 which makes it a misdemeanor for specified persons to purchase, own, possess or control any firearm. On defendant's objection to these references and motion for a mistrial, the court denied the motion but told the jury to disregard the court's prior reference to these statutory provisions as they had no bearing on the case and might be confusing. A majority of the court held that reference to these irrelevant statutes had a reasonable possibility of contributing to the conviction on the gun count.

The dissenting judge noted that when the matter was called to the trial court's attention, it had instructed the jury to disregard the improper reference to the irrelevant statutory provisions and that no objection had been made to this sup-

plemental charge on the ground it was unclear or confusing. Consequently, he found no basis for invoking the plain error rule.

The State had appealed the reversal of the conviction of possession of a revolver. *R.* 2:2–1(a)(2). Defendant's petition for certification of the judgment of the Appellate Division affirming his conviction of unlawful possession of heroin was granted by this Court. 64 *N. J.* 322 (1974).

■■ We are in full agreement with the unanimous ruling of the Appellate Division which interpreted *N. J. S. A.* 2A:151–41 as prohibiting possession of a firearm without a permit in any place, public or private, subject to the exceptions specified in *N. J. S. A.* 2A:151–42. We also agree with the majority holding of the Appellate Division that the unnecessary and improper references to statutory provisions wholly irrelevant to the case had a reasonable probability of contributing to the conviction on the gun count and prejudiced defendant's right to a fair trial on that count.

■ However, we conclude that the trial court's instructions to the jury as to the import and force of an indictment, which the Appellate Division held did not constitute reversible error, were not only improper but possessed the clear capacity to prejudice defendant by suggesting to the jury that an indictment of itself constitutes a *prima facie* finding by a Grand Jury as to defendant's guilt.

■ We also conclude that the prosecutor exceeded the bounds of fair play in his dealing with defendant's prior criminal record both on cross-examination and during summation. Evidence of prior criminal convictions is admissible to affect the credibility of a defendant as a witness and for no other purpose. On his direct examination defendant had disclosed all of his prior criminal convictions. On cross-examination the prosecutor did not ask defendant a single question about his involvement in the crimes for which defendant was on trial, but limited his questioning to a review of defendant's criminal record. During summation the prosecutor kept harping on this record to a point where

it appears that his purpose was to show defendant was a hardened criminal and to have the jury infer guilt from that fact.

We have emphasized many times that the prosecutor's function in appearing for the State is to see to it that justice is done. His comments and conduct carry the authority of the State. Prosecutorial excesses cannot and will not be tolerated. *State v. Spano,* 64 *N. J.* 566 (1974); *cf. State v. Perry,* 65 *N. J.* 45 (1974). Defendant was entitled to a fair trial and did not receive it by virtue of the prosecutor's improper conduct and the trial court's erroneous instructions as to the import and force of an indictment.

The judgment of the Appellate Division is modified to the end that defendant's conviction on both counts is reversed and a new trial ordered.

PASHMAN, J. (concurring). I agree with the majority that the trial court's interpretation of *N. J. S. A.* 2A:151-41 was correct. The statute was properly construed as prohibiting possession of a firearm without a permit in any place, public or private, subject to the exceptions specified in *N. J. S. A.* 2A:151-42. I further believe the errors at the trial level were numerous and much too prejudicial to the defendant. While not considered individually as reversible error, they acquire an ominously devastating potential when viewed in combination. *State v. Orecchio,* 16 *N. J.* 125, 134 (1954). See *R.* 1:7-5.

Most of the problems involved in the instant matter stem from the inaccurate and prejudicial charge to the jury and the court's inadequate and seemingly grudging supplemental curative charge. Initially, the judge explained to and charged the jury on the one relevant statute, *N. J. S. A.* 2A:151-41[1],

---

[1] 2A:151-41. Carrying weapons without permit or identification card; penalty

Except as hereinafter provided, any person who carries, holds or possesses in any automobile, carriage, motor cycle or other vehicle, or

and then on three irrelevant statutes for which defendant had not even been indicted, namely, *N. J. S. A.* 2A:151–42, 2A:151–5 and 2A:151–8[2]. The State concedes that this was an obvious error under *State v. Begyn,* 58 *N. J. Super.* 185, 201 (App. Div. 1959), aff'd 34 *N. J.* 35 (1961), but maintains that the error was remedied by the judge's curative supplemental instruction.

This Court has, in a number of instances, stated that if a judge clarifies the confusion created by an improper jury charge and subsequently limits its determination to the ap-

---

on or about his clothes or person, or otherwise in his possession, or in his possession or under his control in any public place or public area:

a. A pistol or revolver without first having obtained a permit to carry the same in accordance with the provisions of this chapter;

\* \* \* \* \* \* \* \*

is guilty of a high misdemeanor.

[2] 2A:151–42. Carrying firearms about one's premises or for purposes of repair, hunting or target practice

Nothing contained in section 2A:151–41 shall be construed:

a. to prevent a person from keeping or carrying about his place of business, dwelling house, premises, or on land possessed by him, any firearm or from carrying the same from any place of purchase to his dwelling house or place of business, or from his dwelling house or place of business to or from any place where repairing is done, to have the same repaired; nor

b. (exemption for the purposes of hunting, target practice or fishing);

c. (exemption for transporting firearms for the purpose of hunting and target practice).

2A:151–5. Additional sentence for armed criminals

Any person who commits or attempts to commit an assault, robbery, larceny, burglary, breaking and entering, rape, murder, mayhem, arson, abduction, extortion, kidnapping, sodomy or treason, or who is a fugitive from justice, when armed with or having in his possession any firearm. whether or not capable of being discharged or dangerous instrument of any kind, \* \* \* (shall have imposed an additional sentence).

2A:151–8. Certain persons not to have weapons; penalty

Any person, having been convicted in this State or elsewhere of any crime enumerated in section 2A:151–5, whether or not armed with or having in his possession any firearms or dangerous instrument enumerated in section 2A:151–5, \* \* \* who purchases, owns, possesses or controls any firearms or any of the said dangerous instruments, is guilty of a misdemeanor.

propriate problem, no prejudice will be found. *State v. Lucas,* 30 *N. J.* 37, 75–76 (1959); *State v. Smith,* 21 *N. J.* 326, 334 (1956); *State v. Provoid,* 110 *N. J. Super.* 547, 558–559 (App. Div. 1970). In other instances, if the harm complained of is identified as simply an irrelevant matter, there will be no potential jury confusion.

However, in this case, the prejudice went much deeper. The trial judge charged the jury one way and then instructed them in a contradictory fashion a few minutes later. Initially, in his charge, he instructed the jury to consider defendant's prior record substantively for the purposes of *N. J. S. A.* 2A:151–8. Defense counsel vigorously objected, and after some discussion, the judge acquiesced and deleted the three superfluous statutes from his charge. He then told the jury:

Now, the other items with respect to being — that I cited to you, that is, New Jersey Statute 2A:151–42, 2A:151–8 and 2A:151–5 — *just disregard those* * * *[Emphasis added].

Not only might the jury have forgotten the substance of these three irrelevant statutes and become confused about what they could or could not consider, but they might also have misconstrued or misunderstood the judge's instruction concerning the limited legal effect of the defendant's prior record and considered it in coming to their determination on the substantive crime, instead of properly restricting its use.

For the judge to attempt to change the purpose for which defendant's prior record had been admitted at trial at this late date, *i. e.,* the time of the supplemental charge, would be futile. By then the jury had already allowed their decision to be persuaded and tainted by this nonsubstantive evidence.

I might add that I doubt whether a jury does ever truly limit evidence of defendant's prior criminal propensity and record to only affect his credibility. More than likely, they consciously or unconsciously permit limited evidence to run

over and affect the substantive crime itself. The same concern was expressed by Judge Conford in *State v. Von Atzinger,* 81 *N. J. Super.* 509 (App. Div. 1963):

It is dubious enough under the best of circumstances whether the average jury confines its consideration of a defendant's past criminal record to its effect upon his credibility, as is the evidential limitation. See *Report of the New Jersey Supreme Court Committee on Evidence* (1963), pp. 102–103. [81 *N. J. Super.* at 516].

The identical proposition was reiterated in *State v. Manley,* 54 *N. J.* 259 (1969), where this Court said:

* * * We recognize the almost unavoidable psychological impact on the layman-juror of evidence of a defendant's conviction of similar crimes. It may be a lot to ask of him that he put aside an almost common impulse to regard earlier proven proclivity toward commission of similar crimes as some indication of guilt of the offense presently charged against him. [54 *N. J.* at 269–270].

See also "Procedural Protections of the Criminal Defendant — A Reevaluation of the Privilege Against Self-Incrimination and the Rule Excluding Evidence of Propensity to Commit Crime," 78 *Harv. L. Rev.,* 426, 440 (1964). I am cognizant of the fact that New Jersey courts have consistently upheld the use of prior convictions to attack credibility against constitutional challenge. *State v. Mustacchio,* 57 *N. J.* 265 (1970); *State v. Sinclair,* 57 *N. J.* 56 (1970); *State v. Hawthorne,* 49 *N. J.* 130 (1967); *State v. Garvin,* 44 *N. J.* 268 (1965); *State v. Brown,* 41 *N. J.* 590 (1964), *cert.* denied 377 *U. S.* 981, 84 *S. Ct.* 1888, 12 *L. Ed.* 2d 749 (1964). Nevertheless, I believe that the use of a defendant's prior criminal record for impeachment purposes has been abused and misunderstood so frequently that I question whether its usefulness has not come to an end.

The statute governing this area is *N. J. S. A.* 2A:81–12.[3]

---

[3] 2A:81–12. Interest or conviction of crime as affecting credibility

For the purpose of affecting the credibility of any witness, his interest in the result of the action, proceeding or matter or his convic-

Perhaps this statute should be reviewed and revised and a subsequent rule adopted following closely the *Federal Rules of Evidence R.* 609[4] or the proposed *Rules of Evidence R.* 21,

tion of any crime may be shown by examination or otherwise, and his answers may be contradicted by other evidence. Conviction of crime may be proved by the production of the record thereof, but no conviction of an offender shall be received in evidence against him in a civil action to prove the truth of the facts upon which the conviction was based.

[4] *Impeachment by Evidence of Conviction*
 *of Crime*

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement regardless of the punishment.

(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the release of the witness from confinement imposed for his most recent conviction, or the expiration of the period of his parole, probation, or sentence granted or imposed with respect to his most recent conviction, whichever is the later date.

(c) Effect of pardon, annulment, or certificate of rehabilitation. Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a substantial showing of rehabilitation and the witness has not been convicted of a subsequent crime, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on innocence.

(d) Juvenile adjudications. Evidence of juvenile adjudications is generally not admissible under this rule. The judge may, however, allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the judge is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

(e) Pendency of appeal. The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible.

*NOTE*: On November 20, 1972 the Supreme Court of the United States ordered that certain Federal Rules of Evidence be prescribed pursuant to §§ 3402, 3771 and 3772, Title 18, United States Code, and §§ 2072 and 2075, Title 28, United States Code; that said rules shall govern procedure in the various federal courts. The rules took

which were not adopted by this State in 1963, or the *Uniform Rules of Evidence R.* 21.[5] These rules restrict the use of prior convictions to only those crimes involving fraud, lack of veracity or false statement. I do not perceive how justice is served when a defendant can possibly, even though mistakenly, be convicted for crimes for which he has already been punished.

Remoteness of convictions is an additional facet of the problem as Justice Francis succinctly stated in *State v. Hawthorne, supra* 49 *N. J.* at 141:

\* \* \* In proper cases where the element of remoteness is involved, the trial judge in his charge should in fairness call attention to the fact and caution the jurors against giving the conviction any more weight in passing upon the witness's veracity than reasonable and sensible people ought to give it.

effect on July 1, 1973. Said order authorized the Chief Justice of the United States Supreme Court to transmit said new rules to the Congress at its next regular session in accordance with the provisions of Title 18 *U. S. C.* § 3771, and Title 28 *U. S. C.* §§ 2072 and 2075.

Congress, however, suspended the effectiveness of such rules pursuant to *Pub. L.* 93–12, March 30, 1973, 87 *Stat.* 9. See 28 *U. S. C. A.* § 2071 as to rule making power generally. Presently the prescribed *Rules of Evidence* were approved by Bill of the House of Representatives substantially intact (H. R. 5463 passed on February 6, 1974) ; said Bill is awaiting Senate approval.

The legislation approved by the House of Representatives made some changes from the prescribed *Rules of Evidence* promulgated by the United States Supreme Court. An important revision should be noted as follows:

Rule 609. *Impeachment by Evidence of Conviction of Crime*

(a) General rule. — For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible only if the crime involved dishonesty or false statement.

[5]RULE 21. *Limitations on Evidence of Conviction of Crime as Affecting Credibility.* Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility. If the witness be the accused in a criminal proceeding, no evidence of his conviction of a crime shall be admissible for the sole purpose of impairing his credibility unless he has first introduced evidence admissible solely for the purpose of supporting his credibility.

In the present matter, the assistant prosecutor reverted to August 1959 in an attempt to impeach the accused. Convictions which are so remote in time and space bear very little relation to the present. They border on simply being irrelevant and distinctly disconnected matters.

Consistent with my previous observations, I believe that *N. J. S. A.* 2A:81-12 should be reevaluated, and in this instance, a definite time limitation fixed to prevent a prosecutor from resorting to convictions which are too remote in time. This is precisely what the *Federal Rules of Evidence R.* 609(b) has done.

Regardless of the present evidentiary rule, it is my opinion that in the case under consideration, the trial court seriously erred in failing to clearly and accurately instruct the jury as to the pertinent statutes involved. Instead, he incorrectly charged the jury on one relevant statute and three irrelevant statutes. The charge on *N. J. S. A.* 2A:151-8 was by far the most damaging because it permitted the jury to consider the defendant's prior record for the substance of the crime rather than correctly limiting its use solely to the issue of credibility. *State v. Sinclair,* 57 *N. J.* 56, 63-67 (1970); *State v. DeMarco,* 76 *N. J. Super.* 318, 323-324 (App. Div. 1962). The judge's weak supplemental instruction certainly did not overcome this error. Therefore, it is my belief that the judge's improper charge on *N. J. S. A.* 2A:151-8 substantially influenced the jury's decision on both counts. *State v. Bankston,* 63 *N. J.* 263, 273 (1973); *State v. Macon,* 57 *N. J.* 325, 335-336, 340 (1971); *State v. Samurine,* 47 *N. J. Super.* 172, 181-182 (App. Div. 1957), rev'd on other grounds, 27 *N. J.* 322 (1958).

The aforementioned was the most serious error at trial; however, additional factors compounded the prejudice. The trial judge, in explaining to the jury the import and force of an indictment, said:

> * * * [A]n indictment far from being a mere allegation, constitutes a finding by a Grand Jury that a basis exists for subjecting the accused to a trial.

Naturally, defense counsel objected to this statement which might have been taken by the jury as an indication that defendant would not have been indicted if the grand jury did not think he was guilty. This is certainly an improper and impermissible inference, but it is still not entirely improbable that the jury inferred just that conclusion from the judge's explanation. While the judge had previously stated that an indictment was a formal charge and was not evidence of guilt, later contradictory instructions were given which would again augment and perpetuate jury confusion.

The defendant's conviction stands upon the critical determination of whom the jury chose to believe. Throughout the trial, the opposing sides pieced together conflicting stories of what actually transpired. In other words, it was the police officer's narrative of events standing against that of the defendant. The assistant prosecutor was most acutely aware of this situation, which fact was vividly demonstrated during his cross-examination of defendant. The assistant prosecutor totally failed to cross-examine defendant on any specifics of the indicted crime and exclusively dealt with defendant's previous criminal convictions. At this point in the trial, the judge should have instructed the jury under *New Jersey Rules of Evidence R.* 6 as to the limited effect necessarily given prior convictions and that they, as jurors, were forbidden to consider the conviction as evidence of defendant's guilt. See *State v. Manley, supra.* In addition, the judge should have admonished the jury that they were under no compulsion to lower their estimate of defendant's credibility because of the conviction. See *State v. Harris,* 105 *N. J. Super.* 319 (App. Div. 1969) ; *State v. Christie,* 91 *N. J. Super.* 420 (App. Div. 1966). The trial judge failed to give the jury these limiting instructions when defendant was being cross-examined, and, without a doubt, the jurors must have been confused as to the use and import of such evidence.

The assistant prosecutor then proceeded to sum up by again placing great emphasis upon defendant's prior record. The assistant prosecutor remarked:.

I'm not saying that Mr. Johnson isn't an interior decorator, but he has been busy doing a lot of other stuff in the last ten years or so, based on the number of convictions he's had for assault and battery on police officers, robbery, possession of a stolen auto, receiving a stolen auto — about a half a dozen crimes he has been convicted of.

And, a few minutes later, mimicked the defendant's testimony:

· No, I don't know nothing. I'm just an interior decorator while I'm not robbing autos or whatever.

Defense counsel quickly objected to the assistant prosecutor's improper dramatization of previous testimony and the distorted characterization of defendant to which the trial judge reluctantly responded:

All right, let's not compound it by — that's right, just watch it a little, Mr. Fagan.

And, a moment later the judge said, without explanation:

That last phrase may be stricken from the record.

This is hardly an "immediate intervention" and "vigorous instruction" deemed necessary by this Court to counteract the prejudicial effect of a prosecutor's improper reference to a defendant's prior record. *State v. Driver,* 38 *N. J.* 255, 292 (1962); *State v. Thornton,* 38 *N. J.* 380, 400 (1962), *cert.* denied 374 *U. S.* 816, 83 *S. Ct.* 1710, 10 *L. Ed.* 2d 1039 (1963); *State v. Kociolek,* 23 *N. J.* 400, 418–420 (1957).

These judicial exhortations are for the benefit of the lay-jurors and not the attorneys present. That is precisely why clear advice and immediate explanation must be given and

understood by the jurors themselves. There can be no greater injustice than a defendant being convicted for the wrong reasons. Yet, the trial judge made no explanation of his comments and merely felt it sufficient to say "strike it," the importance of which could easily be misunderstood.

In regard to the assistant prosecutor's involvement, this Court has recently admonished prosecuting attorneys in *State v. Spano,* 64 *N. J.* 567 (1974), to guard against excesses. This was the outgrowth of a long line of cases which contained prosecutorial improprieties. *State v. Farrell,* 61 *N. J.* 99, 105 (1972); *State v. Bogen,* 13 *N. J.* 137, 139 (1953); *State v. West,* 29 *N. J.* 327, 338 (1959); *State v. D'Ippolito,* 19 *N. J.* 540, 549 (1955).

While the present prosecutorial remarks might not have reached the level of *Spano,* our courts have been particularly responsive to and watchful for comments which might psychologically aggravate the prejudices of the jury. In this regard, the Court has attempted to rigidly contain evidence of prior convictions within its proper and sanctioned bounds. *State v. Driver, supra; State v. D'Ippolito, supra.* See *State v. Thornton, supra; State v. Buffa,* 31 *N. J.* 378, 379, *cert.* denied 364 *U. S.* 916, 81 *S. Ct.* 279, 5 *L. Ed.* 2d 228 (1960). The prosecutorial excesses condemned in these cases relate to the present instance only in being excesses in like kind, but not degree. The excess here, however, further injured defendant by lending more wood to the fire of jury confusion.

Evidence of defendant's guilt cannot be fairly described as overwhelming. Any chance for lingering juror doubt was, however, removed by the combined and erroneous efforts of the trial judge and the assistant prosecutor. While a reader of the trial transcript might consider these problems just so many small, insignificant and unrelated improprieties or even oversights, when they are viewed in combination, these errors pyramid upward at a deadly speed, quickly rising to the level of plain and prejudicial error and injustice. I would, therefore, affirm the Appellate Division on the weapons count

and reverse on the narcotics charge and grant a new trial on both counts.

PASHMAN, J., concurs in result.

*For modification*—Chief Justice HUGHES and Justices JACOBS, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—6.