687 A.2d 751

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. BENNY HOGAN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 29, 1995—Decided May 9, 1995—Remanded by New
Jersey Supreme Court—June 17, 1996—Resubmitted
December 3, 1996—Decided January 24, 1997.

8

Before Judges MUIR, Jr., KLEINER and COBURN.

*Susan L. Reisner*, Public Defender, attorney for appellant (*Ruth Bove Carlucci*, Assistant Deputy Public Defender, of counsel and on the brief).

*Carmen Messano*, Hudson County Prosecutor, attorney for respondent (*Timothy Moriarty*, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Defendant Benny Hogan was indicted on January 12, 1990, for robbery and burglary allegedly committed on August 29, 1989. Thereafter, on August 15, 1990, a Hudson County grand jury returned a superseding indictment charging defendant with the following crimes: armed robbery, contrary to *N.J.S.A.* 2C:15–1 (count one); robbery, contrary to *N.J.S.A.* 2C:15–1 (count two); burglary while displaying a deadly weapon, contrary to *N.J.S.A.* 2C:18–2 (count three); burglary, contrary to *N.J.S.A.* 2C:18–2 (count four); aggravated assault, contrary to *N.J.S.A.* 2C:12–1b(4) (count five); unlawful possession of a handgun, contrary to *N.J.S.A.* 2C:39–5b (count six); and possession of a weapon for an unlawful purpose, contrary to *N.J.S.A.* 2C:39–4 (count seven). Defendant was found guilty of all counts except count five.

After defendant's motions for judgment notwithstanding the verdict and a new trial were denied, the trial court determined that defendant was eligible for an extended term. The court sentenced defendant to a custodial term of fifty years with a sixteen and two-third year period of parole ineligibility on count one and a concurrent term of fifteen years with a five-year period of parole ineligibility on count three. Counts two, four, six, and seven were merged into counts one and three.

In defendant's initial appeal, he raised nine points of error:

*POINT I*
THE TRIAL COURT COMITTED [SIC] REVERSIBLE ERROR IN DENYING THE DEFENDANT'S PRE-TRIAL MOTION TO DISMISS THE INDICTMENT.

*POINT II*
THE TRIAL COURT COMITTED [SIC] REVERSIBLE ERROR IN DENYING THE DEFENDANT'S MOTION FOR MISTRIAL AFTER THE PROSECUTOR'S OPENING STATEMENT.

*POINT III*
THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FIRST, RESERVING ON, AND THEN DENYING, THE DEFENDANT'S MOTION WITH RESPECT TO THE UNAUTHENTICATED PIECE OF PAPER WHICH THE PROSECUTOR SOUGHT TO PRESENT TO THE JURY.

*POINT IV*
THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN PERMITTING THE PROSECUTOR TO NEUTRALIZE HIS OWN WITNESS (NOT RAISED BELOW).

*POINT V*
THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN PERMITTING THE PROSECUTOR TO (1) ALLUDE TO THE DEFENDANT'S PRIOR CRIMINAL RECORD (2) ELICIT HEARSAY AND (3) LEAD THE WITNESS.

*POINT VI*
THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO ATTEMPT MORE DILIGENTLY TO ELIMINATE THE PREJUDICE BY ADEQUATELY CHARGING THE JURY.

*POINT VII*
THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING THE DEFENDANT'S MOTIONS FOR A JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, A NEW TRIAL.

*POINT VIII*
ASSUMING, *ARGUENDO*, THAT THE INDIVIDUAL ERRORS DO NOT CONSTITUTE REVERSIBLE ERROR, THE ERRORS AGGREGATELY DENIED THE DEFENDANT A FAIR HEARING.

*POINT IX*
THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

In our opinion, *State v. Hogan*, 281 *N.J.Super.* 285, 657 *A.*2d 462 (App.Div.1995), we reversed predicated solely on point one of defendant's appeal. We therefore concluded that we had no need to address the remaining points of error. We stayed our decision to permit the State the opportunity to seek certification, which was granted. 142 *N.J.* 458, 663 *A.*2d 1364 (1995). Our decision

was reversed, 144 *N.J.* 216, 676 *A.*2d 533 (1996), and defendant's appeal was remanded for consideration of the remaining points of error.

On defendant's motion, we granted defendant leave to file a supplemental brief, to which the State has responded. In his supplemental brief, defendant raises five points of error:

*POINT I*

REFERENCES TO DEFENDANT HAVING BEEN IN PRISON BEFORE THE COMMISSION OF THE INSTANT OFFENSE, IN COMBINATION WITH THE PROSECUTOR'S REFERENCE IN HIS OPENING STATE-MENT TO THE FACT THAT MS. DAYE IDENTIFIED DEFENDANT'S PHOTOGRAPH AT THE "BUREAU OF CRIMINAL IDENTIFICATION," AND GRATUITOUS TESTIMONY CONCERNING DEFENDANT BEING CONSIDERED "ARMED AND DANGEROUS" WHEN LATER ARRESTED, VIOLATED *EVID. R.* 55 AND 4. THE JUDGE'S FAILURE TO GIVE ANY CURATIVE OR LIMITING INSTRUCTIONS WHATSOEVER COMPOUND-ED THESE ERRORS, REQUIRING REVERSALS OF DEFENDANT'S CON-VICTIONS.

*POINT II*

THE PROSECUTOR'S CONDUCT DURING TRIAL EXCEEDED THE BOUNDS OF PROPRIETY BY COMMENTING ON MATTERS NOT IN EVI-DENCE, BLATANTLY MISCHARACTERIZING THE TESTIMONY, ELICIT-ING INADMISSIBLE EVIDENCE, AND ACCUSING DEFENSE COUNSEL OF MISCONDUCT, THEREBY DEPRIVING THE DEFENDANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL. (*U.S. CONST.* AMEND. XIV; *N.J. CONST.* (1947) ART. I, PAR. 10)

*POINT III*

THE TRIAL COURT'S INSTRUCTIONS WITH REGARD TO ACCOMPLICE LIABILITY WERE PREJUDICIALLY DIRECTIVE. (Not Raised Below)

*POINT IV*

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A NEW TRIAL BECAUSE HIS CONVICTIONS WERE AGAINST THE WEIGHT OF THE CREDIBLE AND ADMISSIBLE EVIDENCE.

*POINT V*

THE EXTENDED TERM SENTENCE IMPOSED IN THIS CASE IS MANI-FESTLY EXCESSIVE AND MUST BE REDUCED.

Because our original opinion and the Supreme Court decision fully discuss the underlying criminal events which led to defendant's initial indictment and the superseding indictment, we have no reason to repeat them with particularity. We note, however, that other than the investigating police officers, the State's entire

case was predicated upon the factual rendition of the events as remembered by the victim, Elnora Daye. Prior to the superseding indictment, Daye recanted her previous version of those events, which she had provided to the police on the afternoon following armed robbery. Thereafter, Daye retracted her recantation.

Evidence of Daye's recantation and the reasons which caused her to recant were fully explored at defendant's trial. Additionally, the State elicited from Daye her explanation as to the retraction of her recantation. Suffice it to say that the State's case cannot be categorized as a particularly strong one, as it was based solely on the credibility of the victim.

## I

Defendant contends that prosecutorial error requires a reversal of his conviction. In considering that contention, we are aware that "[p]rosecutorial misconduct is not ground for reversal of a criminal conviction unless the conduct was so egregious that it deprived defendant of a fair trial." *State v. Ramseur*, 106 *N.J.* 123, 322, 524 *A.*2d 188 (1987), *cert. denied*, 508 *U.S.* 947, 113 *S.Ct.* 2433, 124 *L.Ed.*2d 653 (1993). *See also, State v. Bucanis*, 26 *N.J.* 45, 138 *A.*2d 739, *cert. denied*, 357 *U.S.* 910, 78 *S.Ct.* 1157, 2 *L.Ed.*2d 1160 (1958), which concluded:

> [N]ot every suspected deviation from perfection on the part of a prosecutor will justify a reversal of a conviction.... [H]is infraction must be clear and unmistakable and must substantially prejudice the defendant's fundamental right to have the jury fairly evaluate the merits of his defense.
>
> [*Bucanis, supra*, 26 *N.J.* at 56, 138 *A.*2d 739.]

For the reasons hereafter discussed, we conclude that the prosecutor's comments in his opening statement were sufficiently egregious that, when viewed in light of the State's entire case, which we have described as essentially weak, *and* the trial judge's refusal to give a curative instruction, defendant was denied a fair trial.

### A.

On the day following the alleged criminal episode, the victim, Elnora Daye, gave a written statement to the police that led to defendant's arrest. That statement included the following:

> I was coming out of 8 Erie Street. I got out of my car in front of my house. I noticed one of the guys who robbed me. I went to a man who just got out of prison and the man knew him. So we went up to him and asked him questions about the incident.

At defendant's trial, during his opening statement, the prosecutor related those facts, which he intended to present at trial, and stated:

> Later on that day, she's with another man on the street and she sees the car again. This other man had been in prison. She tells the police that this man that she knew also knows Mr. Hogan and said, that's Benny Hogan in the car. That's how she got the name of Mr. Hogan.
>
> Then she is called back to the police station by the Detectives.... She's taken from the station to B.C.I., which is the Bureau of Criminal Identification, where they have photographs. She tells the police the general description, height and weight. She's shown photographs of black males....
>
> She picks out Benny Hogan's photograph....

According to the victim's statement, she was shown another series of photographs and selected a second photograph of Hogan. The prosecutor also referred to this second photograph selection during his opening statement.

Based on those comments, defendant's counsel, at side bar, requested a mistrial. Counsel contended that the prosecutor was purposefully implying that defendant had a prior criminal record. The motion was denied.

Viewed in isolation, we cannot clearly state that the trial judge erred in denying the motion for a mistrial. A mistrial motion is granted only when the trial court finds that as a result of error manifest injustice would result from continuation of the trial. *See R.* 3:20–1; *State v. LaPorte,* 62 *N.J.* 312, 318–19, 301 *A.*2d 146 (1973); *State v. DiRienzo,* 53 *N.J.* 360, 383, 251 *A.*2d 99 (1969); *State v. Hubbard,* 123 *N.J.Super.* 345, 351, 303 *A.*2d 87 (App.Div.), *certif. denied,* 63 *N.J.* 325, 307 *A.*2d 98 (1973). The court must also consider whether the error might be cured by a cautionary

instruction or other curative steps. *State v. Winter,* 96 *N.J.* 640, 646–48, 477 *A.*2d 323 (1984). In addition:

> The decision on whether inadmissible evidence is of such a nature as to be susceptible of being cured by a cautionary or limiting instruction, or instead requires the more severe response of a mistrial, is one that is peculiarly within the competence of the trial judge, who has the feel of the case and is best equipped to gauge the effect of a prejudicial comment on the jury in the overall setting.
>
> [*Id.* at 646–47, 477 *A.*2d 323.]

The trial court's decision is granted great deference on appeal. Unless manifest injustice would result, the trial court's decision will be affirmed. *State v. LaBrutto,* 114 *N.J.* 187, 207, 553 *A.*2d 335 (1989).

Here, although the prosecutor's comment relating how the victim learned defendant's name might imply that defendant had a prior criminal record, it did not clearly make reference to a prior criminal record. The subtlety of the comment was perhaps more obvious to defendant's counsel, who obviously knew of defendant's prior record. In our opinion, the trial judge, once she had been alerted to the possible inference should have provided the jury with a cautionary instruction. The trial judge, however, merely denied the mistrial motion and said nothing to the jury.

The trial judge also failed to react to defendant's objection to the multiple references to the Bureau of Criminal Identification (B.C.I.). The victim's statement specifically indicated that she had been taken from the police station to B.C.I. The prosecutor stressed this fact to the jury. Clearly, the jury could infer that there is a difference between a police station and B.C.I. and could infer that photographs that might be available to the police at the police station are somewhat different from photographs available at B.C.I. Here again, the judge denied defendant's mistrial motion and refused to give any immediate cautionary instruction to the jury. In fact, the trial judge indicated at side bar that she had not even heard the reference to B.C.I. Four days later, at the close of the entire case, in her general charge to the jury, the judge stated:

> Now, there is evidence that a photograph was used to identify the Defendant in this case. When you refer to the photograph submitted into evidence, you will note

that that [sic] it has been taken by the police. However, this picture indicates merely that it has been taken by the police in a standard manner. You are not to consider the fact that this is a police photograph as prejudicing this this [sic] Defendant in any way. The photograph is not evidence that the Defendant has ever been convicted or even been arrested for any crime and is not to be considered as such by you.

The fact that the police have in their possession a photograph of this Defendant does not mean that the subject has a criminal record. Such photographs come into the hands of the police for many reasons, such as licenses, permits, passport applications and other reasons and therefore is wholly unconnected with criminal activity.

Although the instruction incorporated the language from the *Model Jury Charge, Criminal* which is generally used in criminal trials where police photographs have been presented as a part of the identification process, the charge as given failed to make special mention of the B.C.I. The instruction also failed to eradicate the inferences that might be drawn from the difference between regular photographs, available to the police at a police station, and photographs maintained at the Bureau of *Criminal* Identification.

The need for a special limiting instruction and a re-evaluation by the trial judge of her prior denial of defendant's mistrial motion is most apparent from the testimony elicited from the victim as part of the State's case. That testimony included the following:

Q. Where did you learn the name Benny Hogan?

A. *From a man who was in prison before with him.*

Q. But had you seen that man yet?

A. Yes.

Q. I'm confused here.

A. I was outside and I noticed the car. *I was talking to somebody who was in prison and they said, oh, that's Benny Hogan.*

MR. SONNTAG: *Objection to the substance of the conversation.*

THE COURT: You can't tell us what somebody else told you. That's hearsay. You can certainly answer the question that you had a conversation with someone.

Mr. Moriarty, you may ask her, certainly, as a result of that conversation in terms of what she may have learned, you should fashion those questions so they don't elicit hearsay.

Clearly, whatever the substance of the conversation was, that's hearsay. However, she can testify to having that conversation and what she may have done as a result of it.

[ (Emphasis added).]

Although the judge did address defendant's hearsay objection, the judge did not give a limiting instruction on the victim's reference to the fact that defendant had been in prison. We realize that defendant's counsel did not again request a mistrial. Yet, the importance of the victim's testimony, particularly after the prosecutor's opening statements and his unnecessary emphasis on the photographic identification at the B.C.I., should have alerted the trial judge to reconsider her prior denial of defendant's mistrial motion, *sua sponte* or, at the very least, to craft a particularized special curative instruction to ameliorate the harmful effect that testimony would have upon defendant.

The prosecutor's opening statement did not *directly* address defendant's criminal record as in *State v. Johnson*, 65 *N.J.* 388, 391–92, 323 *A.*2d 450 (1974). Nor did it rise to the level of egregious conduct as discussed in *State v. Eason*, 138 *N.J.Super.* 249, 258–59, 350 *A.*2d 506 (App.Div.1975) (reversing defendant's conviction where prosecutor used defendant's prior criminal record to "show that he was prone to committing crimes of violence."). The prosecutor's subtle comments, however, became significantly more important in light of the victim's testimony, which was different from the statement that she gave to the police on the day after the crime.

The judge did not *sua sponte* pause to provide a cautionary instruction or even consider calling a recess to contemplate the serious implications of the victim's testimony on defendant's right to a fair trial. The record clearly establishes, however, that the trial judge was substantially troubled by the entire course of the trial. This is quite evident from a colloquy on the record that occurred during jury deliberations.

During its deliberations, the jury requested that the victim's testimony about her encounter with defendant on the day following the crime be read back. In considering how and to what extent the requested re-reading of the victim's testimony might have, the trial judge stated:

18

Now, I've been somewhat concerned about the various references that we've had in this case and it came out first here, to the best of my recollection, in the direct examination, certainly not by virtue of the Prosecutor, but that's—basically, she sort of blurted that out.

Now, at the time, I'm not sure that the jury even heard because she was talking rather low. I was right next to her here and I'm not sure they heard the reference that she made to this man who told her about knowing him from prison. Clearly, the whole thing was hearsay, certainly, as we know and it was allowed. There was no objection, but I was hoping that was going to be the end of that. *It was highly prejudicial.*

(Emphasis added)

Moments later, the judge realized that the defendant had in fact objected. The judge then stated:

The Court indicated on the record that this witness could not tell us about a conversation that took place because it was hearsay. Basically, I sustained that objection, so the question and that answer in my opinion are not part of this record and should not be considered as admissible. Clearly it was hearsay.

Although the trial judge had sustained the objection, she added no additional comment to her ruling and failed to explain precisely to the jury why the testimony should not be considered for any purpose during jury deliberations. Nor did she make any further reference to the improper testimony during her charge to the jury.

The trial judge did monitor the portion of the testimony that was re-read to the jury in an effort to avoid a re-reading of that portion of the victim's testimony which unquestionably indicated that defendant had been in prison on a prior occasion. Yet, even here, the judge's misgivings were prominent.

When the prosecutor argued that the reference to defendant having been in prison should be repeated during the read back, the judge responded:

Well, I don't believe if that's what they're considering, if that's what it is, then it's highly prejudicial. *I should strike this whole trial, if they would convict Mr. Hogan because he was in prison before. Then this whole trial is a sham.*

[emphasis added.]

Despite the judge's misgivings, and although she did monitor the exact read back, it is quite apparent that substantial prejudice

to defendant's right to fair trial had occurred and had not been rectified by judicial action.

## B.

One additional point has been raised by defendant that has some bearing upon our conclusion. Subsequent to the victim's identification of defendant at B.C.I., the police were attempting to locate defendant. He was actually arrested without incident that same night. The arresting officer, who was not otherwise involved in the investigation of this alleged crime, was called as a witness. The officer was asked to describe how the defendant was placed under arrest. The officer responded: "I came out, held him at gunpoint *as he was considered armed and dangerous.*" (Emphasis added). Although defendant objected immediately, the judge indicated that the prosecutor had not erred but did strike the words "armed and dangerous" from the record. Yet, in the prosecutor's summation, the prosecutor reminded the jury that during defendant's arrest, the arresting officer was required to use his gun. Naturally, the summation preceded the jury question which requested a read back of the victim's testimony. We think that the prosecutor's comment, despite the judge's ruling as to "armed and dangerous," when read with the prosecutor's opening statements and when placed in an equation encompassing the victim's testimony, both on the identification issue, and referencing defendant's prior prison sentence, as a whole deprived defendant of a fair trial. *N.J.R.E.* 404(b) provides in pertinent part that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith," but such evidence "may be admitted for other purposes ... when such matters are relevant to a material issue in dispute."

The dangers of admitting evidence of other crimes has recently been reviewed by the Supreme Court in *State v. G.S.*, 145 *N.J.* 460, 678 *A.*2d 1092 (1996). The Court noted:

> There is an unavoidable tension inherent in other-crime evidence. The evidence of other crimes invariably is both probative and prejudicial. *State v. Stevens,* 115 N.J. 289, 300 [558 A.2d 833] (1989). The prejudice of other-crime evidence is its tendency to demonstrate a criminal predisposition; therefore, it poses a distinct risk that it will distract a jury from an independent consideration of the evidence that bears directly on guilt itself. *Id.* at 302 [558 A.2d 833].
>
> > [*Id.* at 468, 678 A.2d 1092.]

The Court additionally stressed:

> The narrow issue, which divided the Appellate Division, is whether, as a result of the trial court's instructions, the use of that evidence by the jury was improper and prejudicial. Recognizing the special dangers posed by the conflicting impacts of other-crime evidence, this Court has required that when a trial court admits such evidence, *the court must specifically instruct the jury about that evidence's limited relevance.*
>
> > [*Id.* at 469, 678 A.2d 1092 (emphasis added).]

The absence of any special instructions, curative comments, or any specific discussion with the jury, when coupled with the overall weakness of the State's case, highlight our perception of trial error and form the basis of our conclusion that defendant was deprived of a fair trial.

Although the specifics of defendant's prior criminal record were not admitted into evidence, the prosecutor clearly alluded to a prior record in his opening statement. The victim's statement to the police leading to defendant's identification also referenced to prior criminal involvement. Those references became more significant when coupled with the subsequent references to photographs in the B.C.I., which was stressed by the prosecutor. The reference, of course, is magnified by the victim's trial testimony specifically indicating that defendant had been in prison, and by the arresting officer's comments that he was required to draw his gun when defendant was arrested, in the absence of any other elicited testimony which would explain why a gun was needed in defendant's arrest. Contrary to the above-cited case law, all of this evidence was admitted *without* any special instruction to the jury. *See, e.g., State v. G.S., supra,* 145 N.J. at 469, 678 A.2d 1092; *State v. Oliver,* 133 N.J. 141, 627 A.2d 144 (1993); *State v. Cofield,* 127 N.J. 328, 605 A.2d 230 (1992); *Stevens, supra,* 115 N.J. 289, 558

A.2d 833; *State v. Cusick*, 219 *N.J.Super.* 452, 467, 530 A.2d 806 (App.Div.), *certif. denied*, 109 *N.J.* 54, 532 *A.*2d 1118 (1987).

■ The references to defendant's prior record coupled with the absence of any curative instruction, require a new trial. As we noted in *State v. Taplin*, 230 *N.J.Super.* 95, 552 *A.*2d 1015 (App.Div.1988):

> Our courts have always recognized the inordinate capacity for prejudice to a defendant which inheres in the jury's knowledge that he has already been convicted of a criminal charge. Indeed, a previously convicted defendant's decision not to testify on his own behalf is typically motivated ... at least in substantial measure, by his desire to keep his prior record out of evidence.... Defendant here obviously chose not to testify for that reason.... Just as obviously, by making that choice, he accepted the risks implicit in foregoing the opportunity to tell an exculpatory story. It was his right to do so and thereby to foreclose the State's right to admit his prior record for impeachment purposes.
>
> Clearly, when a defendant does not testify, the State cannot, in the ordinary circumstance, refer to his criminal record. If proof is nevertheless adduced which permits the jury to infer that he has a criminal record, *defendant cannot but be prejudiced and, in effect, be deprived of the benefit he anticipated in deciding not to testify.*
>
> [*Id.* at 98–99, 552 *A.*2d 1015 (emphasis added).]

Although defendant requested a mistrial, and although defendant entered certain objections which were in part overruled, other aspects of the error we have culled from the record were not specifically objected to by defendant, and more specific instructions to the jury or a request for cautionary instructions were not requested with absolute clarity. Thus, the issue of error is best addressed by us as one of plain error. *See R.* 2:10–2. Plain error is reversible if it is "clearly capable of producing an unjust result." *R.* 2:10–2. *See also R.* 1:7–2. The test is whether the possibility of injustice is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." *State v. Macon*, 57 *N.J.* 325, 336, 273 *A.*2d 1 (1971). We conclude that the errors we have discussed, cumulatively, clearly raise such a reasonable doubt. Unquestionably, cumulative effects of errors can render a trial unfair. *See State v. Orecchio*, 16 *N.J.* 125, 106 *A.*2d 541 (1954). As noted by the Supreme Court:

> Where ... the legal errors are of such magnitude as to prejudice the defendant's rights or, in their aggregate have rendered the trial unfair, our fundamental constitutional concepts dictate the granting of a new trial before an impartial jury.
> [*Id.* at 129, 106 *A*.2d 541.]

We therefore reverse defendant's conviction and remand for a new trial.

## II

Defendant's supplemental brief included sixteen and one-half pages that meticulously reviewed the prosecutor's acts which he contends constitutes prosecutorial misconduct. In response, the State has offered a lengthy explanation for each of the prosecutor's allegedly improper acts.

In most instances, the actions of the prosecutor drew appropriate objections from the defendant and resulted in appropriate rulings by the judge. We have already cited the most egregious conduct of the prosecutor and the most blatant errors of the trial judge as reasons for the reversal of defendant's conviction. Those errors discussed in Part I of this opinion deprived defendant of a fair trial.

Since this matter must be retried, we are satisfied that prior to the re-trial each trial counsel will re-read the entire record of the initial trial, but will, or *should*, also read the respective appellate briefs, both as originally filed and as supplemented, to discern those areas of criticism voiced by adverse counsel. We discern no specific purpose to parse the entire trial record to comment on every alleged impropriety.

We need only remind the prosecutor that Canon 5 of the *Canons of Professional Ethics* provides that "[t]he primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done." *See also State v. Farrell,* 61 *N.J.* 99, 104–05, 293 *A*.2d 176 (1972) (citing *Berger v. United States,* 295 *U.S.* 78, 88, 55 *S.Ct.* 629, 633, 79 *L.Ed.* 1314, 1321 (1935)).

Canon 5, when read in conjunction with *Ramseur, supra,* 106 *N.J.* at 322, 524 *A*.2d 188, and *Bucanis, supra,* 26 *N.J.* at 46,

138 A.2d 739, should serve as a reminder that a conviction will be reversed for egregious prosecutorial conduct that deprives a defendant of a fair trial.

### III

On retrial, the presiding judge must charge the jury, as the trial judge did in this case, with both first and second degree robbery. Defining robbery in each degree and discussing the concepts of accomplice liability is insufficient and plain error, however, when the trial judge omits reference to the precepts enunciated in *State v. Fair*, 45 *N.J.* 77, 95, 211 *A.*2d 359 (1965), to the effect that an accomplice may be guilty of a crime of a different degree than the principal. When lesser-included offenses are submitted to the jury, as was done in this case, it is error when the trial judge fails to "carefully impart to the jury the distinctions between the specific intent required for the grades of the offense." *State v. Weeks*, 107 *N.J.* 396, 410, 526 *A.*2d 1077 (1987). *Accord State v. Bielkiewicz*, 267 *N.J.Super.* 520, 632 *A.*2d 277 (App.Div.1993). The impropriety in the jury charge itself constitutes plain error requiring a reversal of defendant's conviction. *See R.* 2:10–2. *See also State v. Martin*, 119 *N.J.* 2, 15, 573 *A.*2d 1359 (1990), and the decisions cited therein.

### IV

Because we have concluded that defendant is entitled to a new trial, we have no reason to discuss defendant's contentions raised in points four and five of his brief.

Reversed and remanded for a new trial.