# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1915-15T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ARCADIO J. NOVA, a/k/a
JUNIOR NOVA,

     Defendant-Appellant.

_____

Argued January 23, 2019 – Decided February 15, 2019

Before Judges Yannotti, Rothstadt and Natali.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 14-02-0094.

Roberto J. Espinosa argued the cause for appellant (Harkavy, Goldman, Goldman & Gerstein, PA, attorneys; Roberto J. Espinosa and Martin S. Goldman, on the brief).

Ali Y. Ozbek, Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Tom D. Osadnik, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant was tried before a jury and found guilty of first-degree kidnapping, contrary to N.J.S.A. 2C:13-1(b)(1), and other offenses. The trial court sentenced defendant to an extended term of life imprisonment, with a period of parole ineligibility as prescribed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appeals from the judgment of conviction dated December 3, 2015. We affirm.

I.

In February 2014, a Passaic County grand jury returned an indictment charging defendant with second-degree attempting to lure or entice a minor, N.J.S.A. 2C:13-6 (count one); first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count two); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count three); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count four); first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1) (count five); and third-degree failure to timely verify his address with law enforcement authorities, as required by Megan's Law, N.J.S.A. 2C:7-2(a), N.J.S.A. 2C:7-2(c), (d), and (e) (count six). Thereafter, the trial court severed count six and in July 2015, defendant was tried before a jury on the other charges.

At the trial, D.D. testified that on July 3, 2013, a man came to her apartment to install a cable for DirecTV. The apartment is on the third floor of the building, and D.D. resided there with her eight-year-old daughter S.L., her friend G.M., and G.M.'s two-month-old child. D.D. stated that the cable man arrived at around 2:00 p.m. to examine the apartment. He went into G.M.'s room and left after about fifteen or twenty minutes. The man stated that he would return later that day with his tools. D.D. said the man returned at around 7:00 p.m., and S.L. went downstairs and let him into the apartment.

S.L. testified that she was in G.M.'s room when the man first came to the apartment and she let him in. The man left but came back later that day. At that time, D.D., G.M., and G.M.'s child were home. S.L. went downstairs, let the man in, and took him upstairs to the kitchen. S.L. was in the kitchen with her mother, and G.M. was in her room.

After he entered the apartment, the man asked S.L. to hold the door at the main entrance to the building open for him while he got additional materials. S.L. went downstairs and the man came down. When the man returned to the main entrance, he locked the door. He kept S.L. in a small space near the entrance and told her they were going to "play a little game."

S.L. testified that the man gave her several items to hold. He told S.L. to kneel down and blindfolded her with a black plastic bag that he took out of his pocket. Next, the man took a fresh stick of gum and placed it on S.L.'s lips. Afterwards, the man held up his fingers and asked S.L. to identify how many fingers he was holding up. When she correctly identified the number of fingers, he tightened the black bag around her eyes.

According to S.L., the man inserted part of his penis into her mouth for approximately one minute. The incident stopped when S.L. heard her mother calling for her. S.L. ran upstairs and the man left. The black bag was still around S.L.'s neck. She was upset and crying. She told her mother what had happened.

D.D. testified that initially, she did not understand what S.L. was trying to tell her, and she questioned her further. S.L. confirmed that the cable man had placed his penis in her mouth. D.D. testified that S.L. also told her defendant had placed her on her knees, put his hand on her shoulder, told her not to move, and stated that he was recording the incident. D.D. called 9-1-1 and then she, G.M., and S.L. went to the police station.

There, they met Officer Haydee Santana. According to Santana, D.D. and S.L. were hysterical. They told Santana that the suspect was a Hispanic male of Dominican descent and that he worked for DirecTV. They gave Santana

4

defendant's phone number. G.M. obtained the number from the owner of a restaurant, where she saw someone installing cable. G.M. contacted defendant to install cable in the apartment.

Officer Michael Johnson testified that he and two other officers investigated the crime scene. Johnson recovered the black plastic bag that the suspect used to blindfold S.L. He also recovered a drill. Johnson testified that the police were not able to recover any fingerprints from the plastic bag.

Detective Maria Tejada of the Passaic County Prosecutor's Office (PCPO) was assigned to identify the suspect. She went to a bookstore that defendant owned. Defendant was outside working on a truck that was registered to defendant's name. Tejada went into the store and asked an employee about a book. The employee went outside and spoke with defendant.

Defendant entered the store and spoke with Tejada about the book. He was wearing a blue uniform with a gold DirecTV logo on it. Tejada asked defendant about getting DirecTV installed in her home, and they discussed the installation. He gave her a pamphlet with his phone number on it. The phone number was the same number that D.D. had provided to the police.

Detective Danielle D'Annibale testified that the PCPO obtained information confirming the number was registered to defendant's cellphone.

After defendant was arrested, the police confiscated his phone. Initially, the PCPO's computer services unit was unable to bypass the phone's security features. However, Henry Hernandez, who works in the PCPO's computer services unit, eventually bypassed the phone's passcode requirement. There were 116 photos on the phone. The State sought to admit evidence regarding two of those photos.

At trial, the judge permitted Hernandez to testify as an expert witness in forensic data extraction. He explained that the first image was a photo of a young child with something over her eyes and a penis in her mouth. The second image was a photo of the same child with a penis in front of her face. The photos were on defendant's cellphone when he was arrested. The judge admitted the photos into evidence.

Giselle Henriquez, a bilingual interview specialist for the PCPO, testified that she interviewed S.L. a few days after the incident. The interview was recorded and the recording played for the jury. In the interview, S.L. stated that the man who came to the apartment to install the cable asked her to hold the door for him.

S.L. said the man retrieved materials, tied a black plastic bag around her eyes, and placed his penis in her mouth. The man also told her he was recording

the event and would be placing it on YouTube. S.L. said the incident made her upset and caused her to worry that the man would hurt other children.

Henriquez testified that after conducting the interview of S.L., S.L. was presented with an array of photographs that had been compiled by Detectives Michael Boone and D'Annibale. According to Henriquez, S.L. positively identified defendant as the perpetrator. S.L. stated that she was "100 percent certain" that defendant was the person who committed the offenses.

Henriquez separately showed D.D. the photo array. She selected defendant's photo and said he looked familiar, but she was unable to say with certainty that he was the man who came to the apartment. Henriquez also separately showed the photo array to G.M. She selected defendant's photograph, but she could not state with certainly that he was the perpetrator.

Defendant did not testify, and he did not present any witnesses in his defense.

The jury found defendant guilty on all five counts. In August 2015, the judge granted the State's motion to dismiss count six, in which defendant was charged with failing to comply with Megan's Law. On December 3, 2015, the judge denied defendant's motion for a judgment of acquittal or a new trial,

granted the State's motion for an extended term pursuant to N.J.S.A. 2C:44-3(a), and sentenced defendant. This appeal followed.

On appeal, defendant's appellate counsel raises the following arguments:

> POINT I
> THE TRIAL COURT ERRED IN ALLOWING PREJUDIC[I]AL PICTURES OF CHILD PORNOGRAPHY UNRELATED TO DEFENDANT'S CASE TO BE USED AT TRIAL UNDER [N.J.R.E.] 404(b).
>
> POINT II
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR A MISTRIAL AFTER [THE] STATE'S WITNESS TESTIFIED TO INADMISSIBLE EVIDENCE.
>
> POINT III
> THE TRIAL COURT ERRED IN ITS DECISION TO REQUIRE DEFENDANT TO GO THROUGH PLEA-CUT OFF BEFORE PRE-TRIAL MOTIONS WERE COMPLETED.
>
> POINT IV
> DEFENDANT IS [ENTITLED TO] A NEW TRIAL BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL (Not Raised Below).
>
> POINT V
> THE TRIAL COURT ERRED IN ITS DECISION TO CHARGE THE JURY ON A DEFINITION OF KIDNAPPING THAT DID NOT APPLY TO [THIS] CASE.

A-1915-15T2

POINT VI
[DEFENDANT'S] SENTENCE SHOULD BE OVERTURNED BECAUSE IT WAS UNCONSTITUTIONAL, GIVEN AGAINST THE COURT'S PROCEDURES PUT IN PLACE UNDER THE RULES OF COURT AND OVERLY EXCESSIVE AFTER BALANCING [THE] AGGRAVATING AND MITIGATING FACTORS (Partially Raised Below).

[A]. IT WAS NEVER CONFIRMED WHETHER [DEFENDANT] WAS REPRESENTED BY COUNSEL IN HIS NEW YORK MISDEMEANOR CONVICTION FOR SEXUAL ABUSE AND [THEREFORE, THE STATE'S MOTION FOR AN EXTENDED TERM] SHOULD NOT HAVE BEEN GRANTED (Not Raised Below).

[B.] THE STATE FAILED TO FILE A MOTION SEEKING AN EXTENDED TERM WITHIN [FOURTEEN] DAYS AFTER CONVICTION AND FAILED TO PROVIDE GOOD CAUSE FOR ITS MISTAKE.

[C.] THE TRIAL COURT FAILED TO PROPERLY BALANCE AGGRAVATING AND MITIGATING FACTORS WHICH [RESULTED IN] AN OVERLY EXCESSIVE SENTENCE (Not Raised Below).

Defendant has also filed a pro se supplemental brief in which he presents

the following argument:

THE TRIAL COURT ERRED IN ITS DECISION NOT TO EXCUSE FOR CAUSE A JUROR WHO APPEARED BIASED; AND WHO, BY HIS OWN WORDS, STATED THAT HE CANNOT GIVE BOTH SIDES A FAIR TRIAL.  THIS WAS A CLEAR

9

VIOLATION OF DEFENDANT'S RIGHT TO AN IMPARTIAL JURY, GUARANTEED UNDER BOTH FEDERAL AND STATE CONSTITUTIONS. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART. 1[,] PARA. 10.

## II.

We first consider defendant's contention that the trial judge erred by allowing the State to introduce the two photographs recovered from his cellphone. As stated previously, the photographs depicted a young girl, approximately seven or eight years old, with a dark-colored bag tied around her head and eyes, and a penis in her mouth. The young girl appeared to be of Hispanic origin, and the police could not determine if defendant had taken the photos. The State agreed that S.L. was not the young girl shown in the photographs.

A trial court's evidentiary rulings are reviewed under a "deferential standard" and will not be disturbed unless shown to be a mistaken exercise of discretion or inconsistent with the applicable law. State v. Perry, 225 N.J. 222, 233 (2016); State v. T.J.M., 220 N.J. 220, 233-34 (2015). We will not set aside a trial court's evidentiary ruling unless it is "so wide of the mark" as to result in "a manifest denial of justice." Perry, 225 N.J. at 233 (quoting State v. Kelly, 97 N.J. 178, 216 (1984)).

Here, the trial court found that the photos were admissible under N.J.R.E. 404(b), which governs the admission of evidence of "other crimes, wrongs or acts." State v. Rose, 206 N.J. 141, 180 (2011) (quoting N.J.R.E. 404(b)). N.J.R.E. 404(b) states that

> [e]xcept as otherwise provided by [N.J.R.E.] 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

To determine if evidence is admissible under N.J.R.E. 404(b), the court undertakes an analysis using the four-part test adopted in State v. Cofield, 127 N.J. 328, 338 (1992). First, the evidence "must be admissible as relevant to a material issue." Ibid. Second, the evidence "must be similar in kind and reasonably close in time to the offense charged." Ibid. Third, "[t]he evidence of the other crime must be clear and convincing." Ibid. Fourth, "[t]he probative value of the evidence must not be outweighed by its apparent prejudice." Ibid.

If the evidence is admissible, the trial court must instruct the jury on the use of the evidence. Id. at 340-41. The instructions should focus the jury's attention on the limited purposes for which evidence is admissible, precisely

11                                                          A-1915-15T2

explain the permitted and prohibited uses of the evidence, and provide sufficient reference to the facts of the case to allow the jury to understand the fine distinctions in the jury instruction. Id. at 341.

Here, the judge undertook the analysis required by Cofield. The record supports the judge's finding that the photos are admissible under N.J.R.E. 404(b). As noted previously, the first Cofield factor requires the court to find that the evidence is relevant to a material issue in the case. Cofield, 127 N.J. at 338. Relevant evidence is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401.

Defendant has denied that he was the person who kidnapped and assaulted S.L.; therefore, identification was a material issue in this matter. The judge found that the photos were relevant to identification. As the judge noted, the photos depict an incident that is virtually identical to the aggravated sexual assault for which defendant was charged.

Because the photos were on defendant's cellphone, and the phone was in his possession when he was arrested, the photos had a "tendency in reason" to establish that defendant was, in fact, the person who committed the charged offenses. Even if defendant was not the man shown in the photos, a jury could

reasonably assume he had engaged in the same unlawful conduct. The record therefore supports the judge's finding that the photographs were "highly material to the issue of identity."

Regarding the second <u>Cofield</u> factor, the judge again pointed out that the photos depicted an incident that was "extraordinarily similarly" to what was alleged to have occurred in this case. The judge observed that it was not clear when the photos were taken; however, defendant was in possession of the phone with the photos when he was arrested, which was twelve days after the alleged offenses were committed. Moreover, S.L. testified that the perpetrator told her he was recording the incident and intended to place the recording online.

Addressing the third <u>Cofield</u> factor, the judge found that there was clear and convincing evidence the photos showed a person engaged in a sexual assault that was "virtually identical" to the alleged assault upon S.L. The judge noted that the photographs were found on defendant's phone at the time of his arrest and depicted an incident that is strikingly similar to the crime against S.L.

With regard to the fourth <u>Cofield</u> factor, the judge determined that the probative value of the photos for the purposes of identification was not outweighed by their prejudicial nature. Furthermore, the judge provided the jury with a detailed instruction regarding the use of the evidence and made it clear

13

that the photographs were not of S.L., and that the evidence could not be considered for any purpose other than identification.

On appeal, defendant argues that the only reason for admitting the photographs was to show that he had a propensity to commit sexual assaults of the type charged. He acknowledges that identity was an issue in the case, but argues that the State already had S.L.'s identification and testimony by D.D. and G.M. that provided "some indication" he was the person who attacked S.L. Defendant asserts that once the photos were introduced, a jury was unlikely to believe S.L.'s identification was inaccurate. He contends he did not have a chance for a fair trial after the judge admitted the photos into evidence.

We are not persuaded by these arguments. The judge properly admitted the evidence on the issue of identity pursuant to N.J.R.E. 404(b). The record supports the judge's findings on the Cofield factors. In addition, the judge instructed the jurors that they could only consider the photos on the issue of identity. The judge emphasized that the jury could not consider the evidence as proof that defendant "has a disposition or tendency" to engage in criminal conduct of the sort charged.

Defendant asserts that he was prejudiced by the admission of the photographs, but as the judge found, the probative value of the evidence

14

outweighed any prejudice resulting from their admission. The record supports that determination.

The trial court's decision to admit the photos on the issue of identification is consistent with State v. Gillispie, 208 N.J. 59 (2011). In that case, the defendant and others were charged with the commission of murders and other offenses in Barnegat. Id. at 67. At trial, the State sought to introduce evidence concerning the defendant's participation in a robbery and shooting that took place twenty days earlier in New York. Ibid.

The trial court conducted a hearing pursuant to N.J.R.E. 104, and the State presented evidence that showed, among other things, the same gun was used in the Barnegat murders and the New York robbery. Id. at 68. The trial court considered the Cofield factors and determined that the evidence was admissible on the issue of identity. Id. at 68-69.

The Supreme Court held that the trial court correctly found that the first three of the Cofield factors were satisfied, but the admission of details of the New York robbery was unduly prejudicial and should not have been admitted. Id. at 92. The Court concluded, however, that the error was harmless. Id. at 93-94.

A-1915-15T2

In its decision, the Court commented on the admission of evidence of other crimes as evidence of the issue of identification.  Id. at 86-87.  The Court stated that to be admissible on the issue,

> [t]he prior criminal activity with which defendant is identified must be so nearly identical in method as to earmark the crime as defendant's handiwork.  The conduct in question must be unusual and distinctive so as to be like a signature, and there must be proof of sufficient facts in both crimes to establish an unusual pattern.
>
> [Id. at 87 (quoting State v. Fortin, 162 N.J. 517, 532 (2000)).]

As we have explained, in this case, the photos depicted a person engaged in criminal conduct that was essentially the same as the sexual assault for which defendant was charged.  The State agreed that S.L. was not the young girl in the photos, and could not establish that defendant was the man whose penis was shown in the photographs.  However, the criminal activity depicted in the photos was "nearly identical in method" to the sexual assault at issue, and would support the inference that the sexual assault upon S.L. was "defendant's handiwork." Ibid.  Therefore, Gillispie supports the trial court's determination that the photos were admissible under N.J.R.E. 404(b) on the issue of identification.

In support of his argument that the admission of the photos is reversible error, defendant relies upon State v. Skinner, 218 N.J. 496 (2014).  In that case,

the Court held that the defendant's rap lyrics could not be admitted to show his motive or intent to commit murder because they had little or no probative value, were a form of self-expression, and were unduly prejudicial. Id. at 499-500. In this case, however, the photographs were directly relevant to the issue of identification, and the probative value of this evidence outweighed the prejudice to defendant from their admission. Thus, defendant's reliance upon Skinner is misplaced.

We therefore conclude the judge's decision to admit the photos into evidence was not a mistaken exercise of discretion.

III.

Next, defendant argues that the trial judge erred by denying his motion for a mistrial after Santana testified that defendant's wife called G.M. while she was at the police station with D.D. and S.L. reporting the kidnapping and assault. Defendant argues that the judge's curative instruction was insufficient to address the prejudicial impact of the evidence.

The decision on a motion for a mistrial is committed to the sound discretion of the trial judge. State v. Harris, 181 N.J. 391, 518 (2004); see also State v. Hogan, 297 N.J. Super. 7, 14-15 (App. Div. 1997) (stating that an appellate court gives great deference to the trial court's decision on a motion for

a mistrial). A trial court should only grant a mistrial when necessary to prevent a "manifest injustice." State v. DiRienzo, 53 N.J. 360, 383 (1969). We review the trial court's ruling on a motion for a mistrial under an abuse of discretion standard. State v. Harvey, 151 N.J. 117, 205 (1997).

Here, the record shows that the assistant prosecutor asked Santana if S.L. had provided any information when she and her mother came to the police station. Santana replied, "they told me that [the perpetrator] was [a] Hispanic male of Dominican descent. And that he worked for Direct TV." The prosecutor then asked Santana whether "anyone" was "able to provide any sort of contact information for the alleged suspect." Santana replied, "As I got information, the suspect's wife called my victim --."

Defendant objected to Santana's statement and the judge sustained the objection. Defendant then moved for a mistrial, which the judge denied. The judge decided to instruct the jury that Santana's statement was "inaccurate" and had no place in the trial. The assistant prosecutor objected because such an instruction would give the jury the impression that Santana was not a credible witness.

The judge overruled the objection and instructed the jury that Santana had misspoken and the statement was inaccurate. The judge told the jury it could

consider Santana's misstatement in weighing her credibility. The judge then polled the individual jurors to determine whether each juror understood and accepted the instruction. The jurors indicated they understood the instruction and would follow it.

On appeal, defendant argues that the judge erred by denying the motion for a mistrial. Defendant argues that Santana's statement substantially prejudiced the defense because the jury was informed that his wife called G.M. shortly after the incident and tried "to explain the situation." He further argues that the curative instruction only served to highlight the prejudicial testimony. We disagree.

The record shows that the assistant prosecutor did not ask Santana to identify the person who provided contact information about defendant. Indeed, the prosecutor informed the judge that Santana had been specifically instructed not to mention the call. Despite that instruction, Santana stated that defendant's wife had called G.M., but Santana gave no details concerning the call. The judge immediately addressed the objection.

The decision on whether the admission of inadmissible evidence can be "cured by a cautionary or limiting instruction, or instead requires the more severe response of a mistrial, is" a decision committed to the discretion of the

trial judge "who has the feel of the case and is best equipped to gauge the effect of a prejudicial comment on the jury in the overall setting." State v. Winter, 96 N.J. 640, 646-47 (1984). Furthermore, "[t]he adequacy of a curative instruction necessarily focuses on the capacity of the offending evidence to lead to a verdict that could not otherwise be justly reached." Id. at 647 (citing State v. Macon, 57 N.J. 325, 335 (1971)).

Here, the trial judge reasonably determined that a curative instruction could effectively address the potential prejudice to defendant from Santana's statement. We defer to the judge's determination because the judge was able to gauge the effect Santana's statement would have on the jury.

In light of that instruction, we cannot conclude that Santana's statement had the capacity to lead the jury to reach a verdict it would not have otherwise reached. We therefore conclude the judge's decision to deny defendant's motion for a mistrial was not a mistaken exercise of discretion.

IV.

Defendant further argues he was denied due process because the trial judge did not permit him to enter a plea on the morning the jury was to be selected. Defendant argues that the judge erred by establishing a plea cut-off before the judge had decided all of the pre-trial motions. He notes that after the

plea cut-off date, the State informed the defense that S.L. was not the person depicted in the photos found on his phone.

Defendant also asserts that "just days before trial," the judge ruled that the photos could be admitted as evidence to prove his identity as the perpetrator. Defendant contends he could not have a knowing and intelligent discussion with his attorney on the State's plea offers before the plea cut-off date because he did not know all the evidence that could have been used against him at trial.

The record shows that on July 14, 2015, before jury selection was to begin, defendant asked if the State's plea offer was still available. The assistant prosecutor informed the judge and defendant that the offer was no longer available, that defendant had rejected the State's last plea offer, and that the judge was not authorized to accept or consider a plea at that time.

The judge explained that "[i]f there is going to be a resolution, it cannot be on the morning of trial, absent some compelling circumstance and it cannot be just prior to trial" because the court has the duty to conduct trials fairly and efficiently. The judge stated the plea cut-off rule precludes the court from accepting pleas at the last minute, subject to certain exceptions. The judge noted, however, that the State's plea offer was no longer available. Therefore, the issue of whether defendant should be permitted to enter a plea was moot.

21

The record also shows that on December 1, 2015, while addressing defendant's motions for a judgment of acquittal or new trial, the judge noted that the grand jury had returned the indictment in February 2014 and defendant had rejected the State's plea offers as late as April 27, 2015. The State's last plea offer was for a twenty-year prison term. The State had previously offered a fifteen-year term. The judge also pointed out that defendant had refused to sign the pre-trial memo, and "[h]e was adamant that he wanted to reject the plea offer."

The judge observed that once the State withdraws its offer for a plea agreement, the State is under no obligation to resubmit the offer. The judge recognized that the State had not been able to retrieve the photos from defendant's phone earlier, until several months before the trial. The judge nevertheless noted that the State had withdrawn its offer before defendant indicated an interest in entering a plea, and determined that the State had no obligation to resubmit the offer at that time.

We are convinced that the judge correctly decided she could not accept a plea from defendant. Plea agreements require a meeting of the minds. State v. Diorio, 422 N.J. Super. 445, 462 (App. Div. 2011), aff'd in part, rev'd in part on other grounds, 216 N.J. 598 (2014). A defendant cannot accept a plea offer

22

which has been withdrawn or has lapsed by its own terms unless the State resubmits the offer. Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 3:9-3(b) (2019). The trial court may not accept a plea based on a withdrawn or lapsed offer. See State v. Williams, 277 N.J. Super. 40, 48-49 (App. Div. 1994). Here, the record shows that after the plea cut-off date, the State withdrew its plea offer and the assistant prosecutor was not authorized to enter into a plea agreement. The judge correctly determined she could not compel the State to accept a plea.

V.

Defendant also argues that the trial judge erred by charging the jury on kidnapping. He therefore contends his conviction for kidnapping should be reversed.

As we stated previously, defendant was charged with kidnapping contrary to N.J.S.A. 2C:13-1(b)(1). The statute provides that:

> [a] person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period, with any of the following purposes:
>
> (1) To facilitate commission of any crime or flight thereafter; . . . .

[Ibid.]

Furthermore, N.J.S.A. 2C:13-1(d) states that for purposes of kidnapping under N.J.S.A. 2C:13-1, 13-2, and 13-3:

> [a] removal or confinement is unlawful . . . if it is accomplished by force, threat, or deception, or, in the case of a person who is under the age of 14 or is incompetent, if it is accomplished without the consent of a parent, guardian, or other person responsible for general supervision of his welfare.

In this case, while instructing the jury on kidnapping, the judge stated in relevant part:

> Now, in order for you to find the defendant guilty of kidnapping, the [S]tate is required to prove each of the following two elements to you beyond a reasonable doubt.
>
> One, that the defendant, . . . unlawfully removed [S.L.] from her place of residence . . . meaning the apartment . . . where she lived. Or, unlawfully removed [S.L.], a substantial distance from the vicinity where she was found. Or, unlawfully confined [S.L.] for a substantial period. So, (a), and (b), and (c) is a and/or (b) and/or (c).
>
> And two, that the removal or confinement was with the purpose to facilitate the crime – the commission of the crime or flight thereafter.
>
> Now, in relation to the first element, you will note that I've used the terms "unlawfully removed" and/or "unlawfully confined." A removal or confinement is unlawful if it is accomplished by force, threat or

24

deception and/or in the case of a person who is under age fourteen, it is accomplished without the consent of the parent, guardian or other person responsible for the general supervision of her – of her welfare.

[Emphasis added.]

On appeal, defendant argues that the judge's use of the term "and/or" instead of "or" changed the meaning of N.J.S.A. 2C:13-1(d), and created an additional basis for the jury to determine that a kidnapping occurred in this case. Defendant contends that the judge's instruction allowed the jury to find him guilty of kidnapping under the theory of unlawful removal where the parent consented to the removal, but did so based on deception.

We note that defendant did not raise this issue in the trial court. Therefore, we consider whether the judge's instruction was erroneous and, if so, whether the error constitutes plain error. R. 2:10-2. As applied to jury instructions, plain error is an error that "prejudicially affect[s]" a defendant's substantial rights in a "sufficiently grievous" manner which has the "clear capacity to bring about an unjust result." State v. Afanador, 151 N.J. 41, 54 (1997) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).

We are not convinced the judge's use of the term "and/or" in defining an unlawful "removal or confinement" constitutes plain error. The judge's use of the term "and/or" rather than "or" did not substantially change the meaning of

25

the statute, and did not create an additional basis for finding an unlawful "removal or confinement" under N.J.S.A. 2C:13-1(b)(1).

Considered in its entirety, the instruction indicates that defendant could be found guilty of kidnapping if the removal or confinement was either by deception or, in the case of a child less than fourteen years of age, was accomplished without the consent of a parent or guardian. The use of the phrase "and/or" essentially meant that there were two alternative bases for finding an unlawful "removal or confinement."

Even if the judge's use of the term "and/or" in defining an unlawful "removal or confinement" created some ambiguity and therefore could be viewed as erroneous, the error was not "clearly capable of producing an unjust result." R. 2:10-2. We are not convinced the judge's instruction led the jury to reach a verdict on the kidnapping charge it would not otherwise have reached. The evidence established that S.L. was removed and confined without her mother's consent. It also established she was removed and confined by deception. Therefore, we reject defendant's argument that his conviction for kidnapping should be reversed.

## VI.

Defendant also contends that his convictions should be reversed because he was denied the effective assistance of counsel. Defendant argues that his trial attorney was deficient in failing to cross-examine S.L., and counsel's failure to attack the victim's credibility and identification prejudiced the defense.

However, the New Jersey courts generally adhere to a policy against entertaining ineffective-assistance-of-counsel claims on direct appeal. State v. Preciose, 129 N.J. 451, 460 (1992). Such claims should be raised in a petition for post-conviction relief (PCR) because they involve facts that "often lie outside the trial record and because the attorney's testimony may be required." Id. at 462

Accordingly, we decline to address defendant's claim of ineffective assistance of counsel. He may pursue that claim in a PCR petition, which must be filed in accordance with the court's rules.

## VII.

In his pro se supplemental brief, defendant argues that he was denied his right to a fair trial because the judge did not excuse a prospective juror who allegedly admitted he could not be fair and impartial, was biased in favor of law enforcement, and had difficulty understanding and speaking English.

27

The trial judge has "considerable discretion in determining the qualifications of prospective jurors." State v. DiFrisco, 137 N.J. 434, 459 (1994). In this case, defense counsel did not object to the juror being added to the panel. Because defendant did not ask the judge to excuse the juror, he must show that the judge's decision to allow the juror to serve constituted plain error, that is, an error "clearly capable of producing an unjust result." R. 2:10-2; see also Afanador, 151 N.J. at 54.

The record shows that during voir dire, the judge questioned the juror regarding his ability to fairly consider the testimony of a law enforcement officer. The juror stated that his nephew works in the Passaic County jail, but he saw him only "three or four times a year," and they did not have a close relationship.

At one point, the juror indicated he would generally favor the testimony of a law enforcement officer; however, when questioned further, he stated he would not favor the officer's testimony merely because he or she was an officer. The juror stated he had to listen and hear the testimony and consider it.

The judge also questioned the juror to determine if he could remain fair and impartial. The juror stated that everyone is presumed innocent, unless the State proved his or her guilt. The juror stated he believed he could be fair and

impartial. He indicated that he understood defendant did not have to present any evidence or testify on his own behalf, and the State had the burden of proof.

The record shows that the juror spoke with a heavy accent. Although the juror had some difficulty expressing himself in English, defense counsel told the judge the juror understood everything "perfectly" and she had no objection to him serving on the jury. The judge found that the juror could be fair.

We are convinced there is sufficient credible evidence in the record to support the judge's findings. Defendant has not shown that the judge's failure to excuse the juror constituted plain error.

### VIII.

Defendant argues that the trial judge erred by granting the State's motion for an extended term pursuant to N.J.S.A. 2C:44-3(a). He also contends the judge failed to properly balance the aggravating and mitigating factors, and the resulting sentence is excessive and unconstitutional. We find no merit in these arguments.

A. Extended Term

Defendant argues that the State failed to file its motion for an extended term within fourteen days after the return of the jury's verdict, as required by Rule 3:21-4(e). The rule permits the court to extend the time for filing the

A-1915-15T2

motion by "good cause shown." Ibid. Here, the jury returned its verdict on July 27, 2015, and the State filed the motion three days later on July 30, 2015. Thus, the initial motion was timely pursuant to the rule.

However, in its motion, the State identified the wrong indictment and count for which it was seeking an extended term. The State then filed a motion to amend the motion. The judge properly exercised her discretion under Rule 3:21-4(e) in granting the State's motion.

The State established good cause to correct the errors in the earlier-filed motion. The record supports the judge's finding that defendant was on notice the State would be seeking an extended term, and defendant suffered no prejudice by allowing the State to correct the mistakes.

Defendant also argues that the judge erred by finding he was eligible for an extended term pursuant to N.J.S.A. 2C:44-3(a). The statute provides that an extended term may be imposed if

> [t]he defendant has been convicted of a crime of the first, second or third degree and is a persistent offender. A persistent offender is a person who at the time of the commission of the crime is [twenty-one] years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least [eighteen] years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement,

whichever is later, is within [ten] years of the date of the crime for which the defendant is being sentenced.

Here, the judge found that defendant was forty-one years old, and committed the offense for which the State was seeking an extended term when he was twenty-one years of age or older. Copies of records obtained from the Supreme Court of New York show that defendant has two prior convictions in that state. The records state that defendant was convicted of first-degree robbery and second-degree sexual abuse of a child under the age of fourteen.

Defendant committed the former offense in 1998, and he committed the latter offense within ten years of the date when he committed the offenses at issue in this case. Thus, there is sufficient credible evidence in the record to support the judge's finding that defendant was eligible for an extended term.

On appeal, defendant argues that he was not eligible for an extended term as a persistent offender under N.J.S.A. 2C:44-3(a) because the State failed to establish that his New York convictions were obtained in a constitutionally-permissible manner. He argues that his prior convictions are presumptively void because the records pertaining to those convictions do not show he was represented by counsel in those proceedings.

Defendant did not, however, raise this issue at sentencing, and he presented no evidence showing that he was not represented by counsel when he

pled guilty to the offenses for which he was convicted in New York. In this regard, we note that the records pertaining to defendant's New York convictions do not identify the attorneys for the State or defendant.

In support of his argument that the judge erred by finding him eligible for an extended term, defendant relies upon State v. Marshall, 244 N.J. Super. 60, 63-64 (Law. Div. 1990). In that case, the defendant sought PCR, arguing that the court had erred by using his out-of-state conviction for armed robbery as a basis for finding that he was a persistent offender and imposing an extended sentence. Id. at 63.

In Marshall, the judge observed that "[w]here the record of a prior conviction shows, on its face, that a defendant was not represented by counsel, the prior conviction is presumptively void." Id. at 66. The judge stated, however, that where a prior conviction is not presumptively void, it can be used to impose additional penalties. Id. at 66-67.

The judge in Marshall noted that a defendant should challenge any allegedly unconstitutional sentences in the appropriate jurisdiction and cannot by-pass another state's judicial process by collaterally attacking those criminal judgments in New Jersey. Id. at 68-69. The judge therefore held that the defendant's prior out-of-state conviction was presumptively valid and was

properly considered in determining whether he was eligible for an extended-term sentence. Id. at 69.

In this case, the records of defendant's prior New York convictions do not show that either conviction is presumptively void on its face. Defendant did not present the trial court with any evidence showing that he was not represented by counsel when he pled guilty to the New York offenses. He failed to show the New York convictions were obtained in a constitutionally-impermissible manner. Therefore, defendant's reliance upon Marshall is misplaced.

We therefore conclude that the record supports the trial judge's determination that defendant was eligible for an extended term under N.J.S.A. 2C:44-3(a).

B. Defendant's Sentence

Here, the trial judge essentially merged all of the charges with count five (first-degree kidnapping) for sentencing. The judge then followed the guidelines for imposing an extended term, as set forth in State v. Pierce, 188 N.J. 155, 169-71 (2006). The judge reviewed the range of permissible sentences for first-degree kidnapping, from the shortest ordinary term to the longest extended term.

The judge proceeded to address the aggravating and mitigating factors. The judge found aggravating factors one (nature and circumstances of the

offenses), two (gravity and seriousness of harm inflicted on the victim), three (risk that defendant will commit another offense), six (extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted), and nine (need to deter defendant and others from violating the law). N.J.S.A. 2C:44-1(a)(1), (2), (3), (6), and (9). The judge found no mitigating factors.

The judge determined that defendant should be sentenced to an extended term of life imprisonment, with 63.75 years of parole ineligibility, pursuant to NERA. The judge stated that this sentence was intended to ensure "that this defendant is never released from custody." The judge commented that defendant's actions "were beyond depraved and beyond cruel." The judge stated that defendant had committed "an absolute atrocity on this child."

The judge noted that she watched the video of the child's interview, and the interview showed that the incident had an emotional effect upon the child, which would be "very long term." The judge found that defendant "is a terrible threat to the public" and a "terrible threat to children."

On appeal, defendant argues the judge erred by finding aggravating factors one and two. He claims that by doing so, the judge engaged in "double counting." He further argues that the judge failed to consider his mitigating

factors, specifically his age, family, or ability to be rehabilitated. He asserts that the judge erred by using the horrific nature of the offense as a basis to send him to prison for the remainder of his life.

We review the imposition of a sentence under an abuse of discretion standard. State v. Jones, 232 N.J. 308, 318 (2018). In doing so, we must determine whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record;' [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364–65 (1984)). We will not set aside a sentence unless there is a "clear showing of abuse of discretion." Ibid. (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)).

As noted, defendant argues that the judge engaged in impermissible "double counting" by finding aggravating factors one and two. "Double counting" is prohibited because an element of the offense may not be cited as an aggravating factor in the sentencing process. State v. Fuentes, 217 N.J. 57, 74-75 (2014).

Here, the judge based her finding of aggravating factor one on: the terror S.L. experienced when defendant tied the black plastic bag around her head and

eyes; and defendant's statement that he would be recording the incident and posting the video online. Neither circumstance is an element of the offenses of which defendant was convicted.

In finding aggravating factor two, the judge focused on the terror S.L. experienced and her post-incident trauma including fear, nightmares, and her inability to sleep. These effects on S.L. are not elements of the crimes for which defendant was convicted. Therefore, the judge did not engage in impermissible "double counting" when finding aggravating factors one and two.

We also reject defendant's contention that the judge failed to consider his mitigating factors. On appeal, defendant does not identify the specific statutory mitigating factors that the judge should have found. In any event, the judge considered the mitigating factors and found that none were applicable.

The judge expressed sympathy for defendant's family, but stated that his incarceration would not result in an "excessive hardship" to them. She noted that defendant "is an extreme danger to his children." The record supports the judge's finding that mitigating factor eleven did not apply. N.J.S.A. 2C:44-1(b)(11) (defendant's imprisonment will cause excessive hardship to defendant or his dependents).

We are therefore convinced the judge followed the sentencing guidelines for imposing an extended term sentence, as set forth in <u>Pierce</u>, 188 N.J. at 169-71, and the record supports the judge's findings regarding the aggravating and mitigating factors. Defendant has not shown that his sentence represents a clear abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1915-15T2