690 A.2d 1066

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DONNA RIDOUT, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 11, 1997—Decided March 31, 1997.

Before Judges PRESSLER, HUMPHREYS and WECKER.

*Stephen W. Kirsch,* Assistant Deputy Public Defender, argued the cause for appellant (*Susan L. Reisner,* Public Defender, attorney; *Mr. Kirsch,* of counsel and on the brief).

*Marc Fliedner*, Assistant Prosecutor, argued the cause for respondent (*John Kaye*, Monmouth County Prosecutor, attorney; *Mr. Fliedner*, of counsel and on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Following a trial by jury, defendant Donna Ridout was convicted of second-degree robbery, *N.J.S.A.* 2C:15–1, and of third-degree criminal restraint, *N.J.S.A.* 2C:13–2, as a lesser included offense of the kidnapping with which she was charged. She was sentenced to a seven-year prison term on the robbery conviction and to a concurrent four-year term on the criminal restraint and was paroled while this appeal was pending. Defendant appeals, and we reverse.

The critical issue in this case was identification. The victim, elderly and confused, who had been tied up and robbed in his own home, had identified defendant as his assailant from a photographic array shown him several days after the crime. He was unable at trial a year and a half later to make an in-court identification. The elderly doorman of the high-rise senior citizen building in which the victim resided had also identified defendant from the same photographic array five days after the crime as the woman who had asked him for the victim's apartment number on the day of the crime. He too was unable to make an in-court identification at trial. Thus the out-of-court identifications made by each constituted the primary evidence against defendant.

Since both the victim and the doorman had testified, their out-of-court identifications were potentially admissible as substantive evidence pursuant to *N.J.R.E.* 803(a)(3), formerly *Evid.R.* 63(1)(c), which provides that a prior statement made by a witness at trial is admissible if it would have been admissible if made while the declarant was testifying and the statement

is a prior identification of a person made after perceiving that person if made in circumstances precluding unfairness or unreliability.

Following an evidential hearing, the judge found that the two out-of-court identifications met the conditions for admissibility stated by the rule. The fatal error he made was in telling the jury what his finding was, namely, that he had determined that the out-of-court identification procedure was not suggestive and that the conditions of fairness and reliability had been met. We are satisfied that these instructions to the jury so clearly impinged upon the jury's exclusive province to determine weight and credibility of evidence as to have denied defendant a fair trial.

The victim, as we have noted, was elderly and somewhat enfeebled at the time of the crime. Although by the time of the trial he was making his home with one of his daughters, on December 6, 1992, the date of the crime, he was still managing to live alone in a small apartment in a senior citizen complex. His monthly social security payment met his modest financial needs and enabled him to give small money gifts to his family members. Although he was fully mobile and able to do some of his own food shopping at a nearby supermarket, his family had apparently determined that he needed daily assistance with food preparation and that it was generally prudent to check up on him on a daily basis. Consequently, one or another of his daughters or his step-grandson, Robert Newton, brought him a prepared meal each day and visited with him. On three or four occasions in late November 1992, Newton, when he visited his grandfather and brought him meals, was accompanied by defendant with whom he had a friendly relationship.

On December 6, 1992, two of the victim's daughters visited him, leaving him for an hour or so to do his food shopping. While he was alone, the doorbell rang and he admitted the visitor. It was his testimony that he and his visitor spoke for a while and then the visitor pushed him to the floor, tied him up with yellow tape, and took his money—the some $267 remaining from his social security check—out of his pocket, disconnected the phone, and left. By the time the victim's daughters returned, he had managed to free himself. He was at that time highly agitated and disoriented.

The occurrence of the crime he described was, however, corroborated by the facts that the phone was disconnected and yellow tape was found by the investigating officer in the garbage pail. The victim was unable to give a discrete description of his assailant. He did, however, tell the police the woman was middle-aged. He also told his grandson, a State's witness, that the woman was about forty years old and, on the grandson's specific inquiry, that his assailant was not any person he, the grandson, had ever brought to the apartment. Defendant herself denied any involvement in the crime and so testified.

Police investigation led them to the doorman, a man in his mid-seventies, who reported that on the day of the crime a woman between sixty and seventy years old had asked him for the number of the victim's apartment. It also appeared that on the day of the crime, defendant had been in the building, claiming to have intended to visit with a friend of hers whose mother also lived there but that no one was at home. As we further understand the record, police attention finally focused on defendant, then twenty-nine years old, as the result of one of the victim's daughters having so suggested to one of the investigating officers.

Acting upon that suggestion, the police arranged an array of seven photographs, including defendant's, whose photograph they had as a result of a prior arrest, although she had no record of convictions. All the women in the photographs matched defendant's actual description rather than the information related by the witnesses. In any event, the victim was brought by relatives to the police station on December 10, four days after the crime. He was shown the array and identified defendant. The doorman was shown the array on the following day, and he too picked out defendant's photograph as that of the woman who had been looking for the victim's apartment despite his earlier statement that the woman had been between sixty and seventy years old.

The trial commenced with a *Wade*[1] hearing to determine the admissibility of the out-of-court identifications. Both the victim and the doorman testified, as did the police officer who conducted the identification procedures and the victim's daughter who had brought him to the police station and observed the proceedings. Although neither the victim nor the doorman could make an in-court identification of defendant, both recalled having made the out-of-court identification and, to a greater or lesser degree, the content of their respective statements to the police at the time. Despite the evident confused mental state of the victim at the time he made the photo identification and despite the witnesses' estimates of the age of the assailant each had seen, the judge determined that the identification procedure was not suggestive and hence that the evidence of the out-of-court identification by both witnesses was admissible.

At the close of the State's proofs, the judge instructed the jury that although the witnesses were unable to make an in-court identification, it would have before it the photographic array used in the out-of-court identification and could consider that both witnesses had selected defendant's photograph. Over a defense objection, the judge then explained that

> When photographs are used, out-of-court identifications are used, I have to make certain findings of fact and *I have to make a determination that the method that was used was fair and that the method that was used was reliable.* It doesn't mean that I accept—you should accept exactly what happened there, but *I made a determination the day before the case was started that the method that the police used in selecting the photographs and putting the photographs out was not unduly suggestive.*
>
> What I mean by that is they didn't say just stick one picture of this woman in, I don't know exactly, but somewhere around a 30 year old black woman and the photographs that were used were 15 year old white men or 75 year old white—black females, that kind of thing. *So, I made that determination.* That's why you will have those photographs to look at and that's why you can accept the identification that was made in court if you want to.
>
> [Emphasis added.]

---

[1] *United States v. Wade*, 388 *U.S.* 218, 87 *S.Ct.* 1926, 18 *L.Ed.*2d 1149 (1967).

In his closing instructions, the judge again returned to his theme. This time he explained to the jury that

> The doctrine or rule permits the prior written statement or identification to be admitted into evidence and thus to be considered by you as proof of the truth of the matter contained in the statement or in the identification.
>
> *This is so only where certain conditions have been met which ensure fairness and reliability.* I told you that I ruled.*earlier that those conditions had been met,* and *I don't mean that I'm saying that what was said in those statements or in those identifications is true, but I found that they were done fairly, not suggestively and reliably.*
>
> Thus, you may consider the witnesses prior out-of-court identification as independent evidence of the identity of the person who robbed him even though there were no identification at trial. You could also consider the out-of-court statement given to the police by both Mr. Fitzpatrick [victim] and Mr. Pressley [doorman] for the same purpose.
>
> This rule is based upon the rationale that the prior identification is likely to be correct because it was made when the events and sensory impressions were in the mind of the one making the identification.
>
> Thus, even though there was no in-court identification in this case, you may still consider the prior out-of-court identification that the witness made and weigh it along with the other evidence that the State has produced in determining whether the State has proven beyond a reasonable doubt that the defendant is guilty of the offense with which she is charged.
>
> [Emphasis added.]

We think the fundamental defect in these instructions is obvious. Patently, the purpose of the *Wade* hearing is to enable the judge to determine the admissibility of identification evidence. The two-prong analysis typically requires the judge to determine whether an out-of-court identification in the totality of the circumstances was unduly suggestive and if it was, whether the suggestiveness resulted in a substantial likelihood of misidentification. *See, e.g., Simmons v. United States,* 390 *U.S.* 377, 384, 88 *S.Ct.* 967, 971, 19 *L.Ed.*2d 1247, 1253 (1968); *State v. Long,* 119 *N.J.* 439, 493–494, 575 *A.*2d 435 (1990); *State v. Madison,* 109 *N.J.* 223, 232, 536 *A.*2d 254 (1988); *State v. Orlando,* 269 *N.J.Super.* 116, 124, 634 *A.*2d 1039 (App.Div.1993), *certif. denied,* 136 *N.J.* 30, 641 *A.*2d 1040 (1994).[2] We do not take issue with the judge with

---

[2] Because there was no in-court identification, the typical next question did not have to be reached, namely, whether the tainted out-of-court identification

respect to his conduct of the hearing. Nor do we necessarily fault his conclusion that the photographic identifications were not suggestive—or, in the formulation of *N.J.R.E.* 803(a)(3), "made in circumstances precluding unfairness or unreliability." [3] The problem is in his having told the jury that he had determined that the conditions of admissibility had been met and that he had thus specifically determined that the identifications were not only not suggestive but also had met the reliable and trustworthy conditions stated by the rule.

There is apparently no reported decision in this State addressing the question of what a judge may tell a jury after a *Wade* hearing. We have no doubt, however, that the judge cannot tell the jury anything that would preempt its fact-finding function. Obviously, the weight and credibility to be accorded the out-of-court identifications were matters exclusively for the jury. And while the judge here may have obliquely suggested to the jury that they were the final arbiters of the facts, we are persuaded that the jury must necessarily have been influenced in its weight and credibility determinations by the judge assuring it he had already found the identifications to be reliable and trustworthy—precisely the determinations the jury had to make. The defendant was, consequently, deprived of her right to have the jury make unfettered and undirected critical findings of fact.

We find the situation here closely analogous to the law regarding the admissibility of defendants' statements. In *State v. Hampton*, 61 *N.J.* 250, 271–272, 294 *A.2d* 23 (1972), the Supreme Court carefully delineated the respective roles of judge and jury in the admission into evidence and ultimate consideration of defen-

---

precludes admission of the in-court identification or whether the witness clearly and convincingly had an independent source for making the in-court identification. *See, e.g., State v. Madison, supra,* 109 *N.J.* at 245, 536 A.2d 254.

[3] We do note, however, that the record suggests that the judge's evaluation focused primarily on the mechanical aspects of the identification rather than on the totality of the circumstances. We assume that the inquiry will be properly focused at the retrial.

dants' statements. In sum, since the voluntariness of the statement is the condition for its admissibility, the determination of voluntariness is for the court. The issue of credibility is for the jury. The jury is not to be told of the judge's voluntariness decision but instructed that, based on all the circumstances, it must determine whether the statement is credible and, if not, to disregard it. The reason for the prohibition against the court informing the jury of its finding is clear—such an advisory obviously influences, and improperly so, the jury's independent consideration of the same circumstances for purposes of making its credibility finding. The *Hampton* rule was codified by former *Evid.R.* 8(3), now *N.J.R.E.* 104(c).

We see no conceptual difference in this context between defendants' statements and witness identifications. In both cases, the judge must make a preliminary determination of whether constitutionally mandated conditions for admissibility have been met. If the evidence is admitted, the jury must determine its credibility based on essentially the same circumstances that the judge considered, and, of course, without a judicial seal of approval. Clearly, advising the jury of the basis of the court's admissibility determination would improperly interfere with its fact-finding in the confession situation. The same is patently so in the identification situation as well. It is quite enough that the evidence is admitted. Once admitted, the jury must be told how to weigh it in a manner that does not impair its independence in exercising that function.

Other jurisdictions that have considered the issue agree that the jury must be untainted by knowledge of the judge's reasons for admitting evidence of an out-of-court identification. *See, e.g., Sales v. Harris*, 675 *F.*2d 532, 539 (2d Cir.), *cert. denied*, 459 *U.S.* 876, 103 *S.Ct.* 170, 74 *L.Ed.*2d 140 (1982) (holding improper the judge's instruction that the photo procedures followed were not suggestive as a matter of law); *People v. Ruffino*, 110 *A.D.*2d 198, 494 *N.Y.S.*2d 8, 13 (1985) (holding improper the trial judge's disclosure to the jury that the fairness of the identification procedures was not in issue, the appellate court noting that "realistical-

ly, once the jury became aware of the judicial imprimatur which the lineup had received, it was unlikely to give much serious consideration to defendant's claim that the suggestiveness of the lineup had influenced the witness' identification"). *See also People v. Castricone,* 198 *A.D.*2d 765, 604 *N.Y.S.*2d 365, 366 (1993); *People v. Witted,* 79 *Ill.App.*3d 156, 34 *Ill.Dec.* 393, 398 *N.E.*2d 68, 77 (1979).

The reliability of the out-of-court identifications here was what this case was all about and what the jury had to determine. The trial judge's instruction to the jury effectively took that issue out of its hands. The resulting harmful prejudice is evident. Defendant was denied her right to a fair trial.

Because we are satisfied that defendant is entitled to a new trial for this reason, we need not dwell at length on her remaining contentions. She argues that the judge's references to her "mug shot" without adequate explanation was plain error. We are, however, confident that on retrial there will be no gratuitous references to mug shots, that the appropriate model jury charge will be used, and that the judge will be mindful of our recent consideration of the proper way to deal with the so-called mug-shot issue. *See State v. Hogan,* 297 *N.J.Super.* 7, 15–18, 687 *A.*2d 751 (App.Div.1997). We find no merit to defendant's remaining contentions: first, that the judge erred in his charge respecting the State's burden of proof, *see State v. Medina,* 147 *N.J.* 43, 685 *A.*2d 1242 (1996), and second, that the prosecutor made improper reference to defendant's impecuniousness as a motive for the crime. That is not a fair characterization of the prosecutor's remarks in context. Accordingly, these issues do not require disposition by written opinion. *R.* 2:11–3(e)(2).

The judgment of conviction is reversed and we remand for a new trial.