**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4243-17T1

STATE OF NEW JERSEY,

        Plaintiff-Respondent,

v.

AMIE MARROCCELLI, a/k/a
ANNIE M. MARROCCELLI,

        Defendant-Appellant.

_____

Argued December 11, 2019 – Decided December 23, 2019

Before Judges Haas, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 11-06-0380.

Cody Tyler Mason, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).

Paul Henry Heinzel, Assistant Prosecutor, argued the cause for respondent (Michael H. Robertson, Somerset

County Prosecutor, attorney; Paul Henry Heinzel, of counsel and on the brief).

PER CURIAM

This matter returns to us following a remand ordered in our previous opinion. State v. Marroccelli, 448 N.J. Super. 349, 371 (App. Div. 2017). In that case, we reversed defendant Amie Marroccelli's conviction for second-degree vehicular homicide because the trial judge incorrectly barred defendant from introducing a note her husband allegedly wrote in which he admitted that he, rather than defendant, was driving the car that struck and killed the victim. Id. at 361, 370-71. We also held that the judge "mistakenly exercised his discretion by preventing her from presenting evidence concerning her driving habits to support her claims she was not driving the [car] at the time of the accident." Id. at 371-73.

On remand, the judge conducted a new trial before a jury, which again convicted defendant of second-degree homicide in violation of N.J.S.A. 2C:11-5(b)(1). The judge sentenced defendant to seven years in prison subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, and three years of parole supervision upon her release. This appeal followed.

On appeal, defendant raises the following contentions:

POINT I

THE JUDGE IMPROPERLY REFUSED TO STRIKE TESTIMONY THAT DEFENDANT'S HUSBAND TOLD A STATE TROOPER AT THE SCENE OF THE ACCIDENT THAT DEFENDANT WAS DRIVING THE CAR; THAT TESTIMONIAL STATEMENT WAS ADMITTED IN VIOLATION OF DEFENDANT'S SIXTH AMENDMENT AND STATE-CONSTITUTIONAL RIGHTS TO CONFRONT THE WITNESSES AGAINST HER.

POINT II

THE JUDGE IMPROPERLY EXCLUDED "REVERSE" N.J.R.E. 404(b) EVIDENCE THAT, 21 HOURS AFTER THE FATAL ACCIDENT, THE DECEDENT STILL HAD COCAINE AND MARIJUANA METABOLITES IN HIS SYSTEM AND, THEREFORE, MAY HAVE BEEN INTOXICATED HIMSELF AT THE TIME OF THE CRASH, RENDERING HIM UNABLE TO COPE WITH WHAT MIGHT OTHERWISE HAVE BEEN ONLY A MINOR TRAFFIC ACCIDENT.

POINT III

WHEN SUSTAINING AN OBJECTION, [THE TRIAL JUDGE] IMPROPERLY TOLD THE JURY THAT HE HAD ALREADY DECIDED A PRETRIAL MIRANDA MOTION IN THE CASE, A CLEAR VIOLATION OF CASE LAW THAT FORBIDS A JUDGE FROM TELLING A JURY ABOUT PRETRIAL RULINGS BECAUSE TO DO SO MIGHT AFFECT THE JURY'S EVENTUAL CREDIBILITY FINDINGS.

POINT IV

3

EVEN IF ANY ONE OF THE COMPLAINED-OF ERRORS WOULD BE INSUFFICIENT TO WARRANT REVERSAL, THE CUMULATIVE EFFECT OF THOSE ERRORS WAS TO DENY DEFENDANT DUE PROCESS AND A FAIR TRIAL. (Not Raised Below).

After reviewing the record in light of the contentions advanced on appeal, we affirm.

I.

As was the case in defendant's first trial, the primary issue on remand "was whether defendant was driving her car on I-78 in Somerset County on the night it struck a vehicle driven by the victim." Marroccelli, 448 N.J. Super. at 355. That evening, a witness was driving behind the victim's car, and saw defendant's white BMW pass his car and pull directly alongside the victim's vehicle. The witness could not see who was driving the BMW. The witness testified the BMW suddenly moved to the right and struck the victim's car, sending it down an embankment where it crashed in the woods lining the highway.

About six minutes later, Trooper John Mucksavage arrived at the accident scene. He found the unconscious victim inside his car, bleeding and gasping for air. The trooper called for emergency medical assistance, and a helicopter

A-4243-17T1

arrived to transport the victim to the hospital. The victim died the next day as the result of a brain hemorrhage.

Trooper Mucksavage found defendant and her husband, Jason Bradbury, walking along the road. Defendant was barefoot. The couple told the trooper they were not injured in the crash, but defendant complained that she had gotten thorns in her feet from walking in the woods without shoes. Defendant stated she and Bradbury were coming from a wedding reception. The trooper testified defendant had alcohol on her breath and that Bradbury was "obviously intoxicated."

Defendant told the trooper she was driving the car when she saw a deer or a dog in the middle of the road, causing her to veer off the highway into a ditch. She claimed she did not recall hitting the victim's car. However, Trooper Mucksavage saw that defendant's BMW had sustained damage and had "black rubber markings" and red paint on it from striking the victim's car. White paint from defendant's BMW was found on the driver's side of the victim's car.

Defendant told Trooper Mucksavage that she was barefoot because she had taken off her high heels and put on "flip-flops" to drive. After the crash, defendant could not open the driver's side door of her car, so she climbed out on

the passenger side. She lost the flip-flops when she got out of car and walked back up to the highway.

Defendant was much shorter than her husband. Photos taken of defendant's BMW showed that the driver's seat was positioned so far forward that a person of Bradbury's height would not have been able to sit in it.

Approximately two hours later, Trooper Mucksavage administered field sobriety tests to defendant, and she failed them. He arrested defendant for driving while intoxicated, and drove her to the hospital to obtain a blood sample. Defendant's blood was drawn about ninety minutes later and her blood alcohol content (BAC) was .087%. Using extrapolation analysis, the State's expert witness testified that defendant's BAC at the time of the crash was 0.14%.

Defendant's doctor testified that defendant came to her office two days after the crash for treatment of foot and leg injuries. Defendant told the doctor she was the driver of the car on the night it struck the victim.

Defendant's employer testified that the wedding reception defendant and Bradbury attended was for his daughter. When later describing the accident to her employer, defendant told him that she was the driver. Defendant's insurance agent testified that when defendant called to file an insurance claim concerning the accident, she reported she was driving the BMW.

A-4243-17T1

The parties stipulated that defendant later sent the victim's mother a letter that stated, among other things, that "[t]he depth of [her] guilt is immeasurable[,]" but it was "an accident" because she "saw a deer" and then "jolted the wheel," never thinking she "had hit another vehicle." Defendant told the victim's mother that she was "haunt[ed] . . . day in and day out" by what happened. She also stated that she once dreamed of the victim, who "winked and smiled and said it's all right, I'm okay. It's how it was meant to be. You will see one day. Others were near me to live and that is why I had to go."

Defendant did not testify, but three witnesses testified on her behalf. Defendant's former boyfriend testified that he drove defendant to her attorney's office sometime in 2012. When they returned to his car to drive home, the boyfriend stated defendant handed him a letter that was allegedly signed by Bradbury. The letter stated, "To whom it may concern: I, Jason Bradbury, was driving the car at the time of the accident on 10-10-10. [Defendant] was not driving. Jason Bradbury, 2:32 a.m., April 5, 2011." The boyfriend stated he held on to the note for an unspecified period of time before returning it to defendant.

Defendant also called a handwriting expert, who opined that Bradbury was the note's author, and that defendant was not. However, the expert never saw

Bradbury write the samples purporting to be his handwriting, nor did the expert observe defendant write the samples of her handwriting that he reviewed.

One of defendant's friends testified she spoke to Bradbury sometime before March 19, 2013, and he told her he was driving the car when it struck the victim. The friend claimed she later confronted Bradbury about this statement, and he confirmed he was driving, but "did not cause the accident."

## II.

In Point I of her brief, defendant argues that when Trooper Mucksavage testified on re-direct examination that Bradbury stated defendant was driving the BMW on the night of the accident, this statement violated her Sixth Amendment right to confront the witnesses against her. We disagree.

From the outset of the trial, defendant's position was that she told the police, her doctor, her employer, and her insurance agent that she was driving the car that struck and killed the victim, and apologized to the victim's mother for doing so, as part of a scheme to protect Bradbury from prosecution. Thus, defense counsel's opening statement alleged that Bradbury convinced defendant to "take the weight" for him and she agreed to do so because she believed the only charge would be driving while intoxicated. When the couple learned that the car had struck and killed the victim, defendant wanted Bradbury to admit he

8

was the driver and, following an argument sometime later, Bradbury took responsibility by writing the "confession note."

During cross-examination, defense counsel repeatedly asked Trooper Mucksavage why he accepted defendant's admission that she was driving the BMW, rather than taking steps to investigate Bradbury. To address this defense tactic, the prosecutor and the trooper had the following brief exchange during the trooper's re-direct examination:

> Q:    You were asked questions by [defense counsel] about whether you asked [defendant] whether anybody else was driving the car, correct?
>
> A:    Yes, he asked me that.
>
> Q:    And you were asked questions by [defense counsel] that you accepted that she said she was the driver, correct?
>
> A:    Yes.
>
> Q:    Was Jason Bradbury also asked at the scene who was the driver?
>
> A:    Yes.
>
> Q:    And what did he say?
>
> A:    He informed me she was driving.

Defendant did not object to this testimony, and the State moved on to question the trooper about other topics.

A-4243-17T1

The State called ten additional witnesses after Trooper Mucksavage testified and then rested its case. During a charge conference conducted eight days <u>after</u> the trooper completed his testimony, defense counsel for the first time raised the trooper's statement that Bradbury said that defendant was driving for the first time. The attorney did not ask the judge to strike the trooper's statement as violative of defendant's confrontation rights, nor did he request a curative jury instruction. The attorney stated he had not objected to the statement because he did not want "to highlight it[,]" and he was concerned that if the judge now gave the jury an instruction to disregard it, this would only draw attention to what the trooper said. Instead, defense counsel asked the judge to bar the prosecutor from referring to this testimony during summations.

As it was clear that defendant was not asking for any immediate action, the judge reserved on the issue, and stated:

> Well, had the objection been made in a timely fashion, I would like to think that I would have reacted as I have in these other circumstances, and explained to the jury that hearsay generally is not admissible. However, there are exceptions to the hearsay rule, among which are to explain why a witness took certain action or refrained from taking certain action. And so I would have given the jury a cautionary instruction at that time. Ladies and gentlemen, you can't take that hearsay as for the truth of what was said, you can only consider it to explain why the Trooper did something or didn't do something. Now out of context, I can still give that to

them, but they're going to look at me with a blank look, because they're not going to remember when that came in. But, we'll reserve on that give it some thought. Those are some possible outcomes.

Two days later, defense counsel again asked the judge to bar the State from referring to Trooper Mucksavage's brief statement during summation. The judge denied the motion. In addition to finding that the testimony was only elicited to counter defendant's argument that the trooper was somehow remiss in failing to investigate the veracity of defendant's admission that she was the driver, the judge found that the statement was admissible under N.J.R.E. 806. That Rule permits a party to introduce a hearsay statement in certain circumstances to contradict a hearsay statement introduced by the other party.

In spite of the judge's ruling, the State never referred to Bradbury's statement during its summation. Therefore, defendant received all the relief she requested concerning the statement.

Under these circumstances, we discern no reversible error due to the admission of the statement at trial. The Confrontation Clauses of both the United States and New Jersey Constitutions "prohibit the use of out-of-court testimonial hearsay, untested by cross-examination, as a substitute for in-court testimony." State ex rel. J.A., 195 N.J. 324, 342 (2008). "[A] declarant's narrative to a law enforcement officer about a crime, which once completed has

11

ended any 'imminent danger' to the declarant or some other identifiable person, is testimonial." Id. at 348 (citing Davis v. Washington, 547 U.S. 813, 827-830 (2006)).

However, "the [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford v. Washington, 541 U.S. 36, 59 at n.9 (2004); see Tennessee v. Street, 471 U.S. 409, 414 (1985). Therefore, non-hearsay statements are not subject to Confrontation Clause considerations. State v. Buda, 195 N.J. 278, 301 (2008).

Furthermore, a defendant may waive his or her right to confrontation. State v. Williams, 219 N.J. 89, 98 (2014). "Defense counsel, many times as a matter of trial strategy, will refrain from objecting to hearsay that may inure to the advantage of the defendant." Id. at 99. Therefore, it "makes perfect sense that 'the defendant always has the burden of raising his Confrontation Clause objection.'" Ibid. (citing Melendez-Diaz v. Massachusetts, 557 U.S. 305, 327 (2009)). "It is the defendant's choice 'to assert (or forfeit by silence) his Confrontation Clause right.'" Ibid. (citing Melendez-Diaz, 557 U.S. at 326).

Strategic decisions made by defense counsel will not present grounds for reversal on appeal, except for the most extreme cases. State v. Marshall, 123

N.J. 1, 93 (1991). "The defendant cannot request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable then condemn the very procedure he sought and urged, claiming it to be error and prejudicial." State v. Pontery, 19 N.J. 457, 471 (1955). So where counsel deliberately chooses to forego an objection or a curative instruction in an attempt to minimize the impact of testimony, counsel cannot later "argue that the court should have given a more immediate curative instruction, when it was defense counsel who insisted that the court not 'highlight' the [issue] with a[n] instruction to the jury." State v. Loftin, 146 N.J. 296, 365 (1996).

Here, defendant waived her right to object to Trooper Mucksavage's statement. She waited eight days after he testified to bring up the issue, and then specifically declined the opportunity to move to strike the statement or have the judge give the jury an instruction on how to evaluate this testimony. Instead, defendant only sought to bar the State from referring to the statement in summation and, even though the judge did not grant defendant's request, the State never mentioned the statement in its final argument to the jury. In short, defendant made a strategic decision to avoid drawing attention to the statement either by asking to strike it or by having the judge instruct the jury about it.

A-4243-17T1

Thus, defendant cannot now claim that the judge erred by following the course of action she urged at trial. Loftin, 146 N.J. at 365.

Moreover, the statement was admissible because it was not offered for its truth, but rather to explain why Trooper Mucksavage did not challenge defendant's admission that she was driving the car. See Tennessee v. Street, 471 U.S. 409, 414 (1985) (stating that "[t]he non-hearsay aspect of [an accomplice's] confession – not to prove what happened at the murder scene but to prove what happened when [defendant] confessed – raises no Confrontation Clause concerns"). In addition, the statement was also admissible under N.J.R.E. 806 because it clearly responded to the hearsay statements contained in the note and defendant's friend's testimony indicating that Bradbury was the driver.

Even if the statement should have been stricken from the record, however, any error in failing to do so was clearly harmless under the circumstances of this case. State v. J.R., 227 N.J. 393, 417 (2017) (stating that "[a]n error will not lead to reversal unless it is 'clearly capable of producing an unjust result'") (quoting R. 2:10-2). The brief statement was never referred to again by the State. It was also consistent with defendant's repeated contention throughout the trial that she and Bradbury agreed to lie at the accident scene and say that defendant was driving the car. Moreover, the evidence that defendant was the

14

driver was overwhelming. Defendant admitted she drove the BMW to the police, her doctor, her insurance agent, and her employer. Defendant also sent a letter to the victim's mother expressing her guilt after the victim allegedly appeared to her in a dream. In addition, the driver seat of the car was also positioned in a way that only defendant could have driven it.

Therefore, we reject defendant's contention on this point.

III.

In Point II, defendant next argues that under N.J.R.E. 404(b), the judge should have allowed her to introduce a toxicology report stating that the victim had metabolites of cocaine and marijuana in his system at the time of the accident. Again, we disagree.

Before the trial began, the State filed a motion to bar defendant from introducing the report unless she presented an expert witness to explain its significance to the jury. Defendant argued that the presence of metabolites of cocaine and marijuana in the victim's system would permit the jury to infer that the victim was under the influence of these substances at the time of the accident, and that his reckless driving caused the accident.

Defendant did not retain an expert witness to make this causal connection or to otherwise explain the significance of the report. Accordingly, the judge

denied defendant's motion. In doing so, the judge noted that "defendant assumes that the mere presence of these metabolites in the victim's blood inhibited his ability to drive carefully and that, therefore, it may be inferred that it was the victim's own reckless conduct which caused the accident and his death[.]" However, "[c]riminal defendants are not permitted to suggest inferences to be drawn from evidence where expert testimony is required to support such inferences . . . That is the case here."

The judge also stated that "we don't know that [the victim] was under the influence of these substances, and cannot know it from the toxicology report[.]" Thus, the court found that the toxicology report was not relevant, because:

> the evidence proposed does not have a tendency in reason to aid the trier of fact in the determination of an issue before it. Without expert testimony the jury would not know any more than this court knows what to make of the toxicology report. And to permit the jury to speculate as to what this toxicology report might indicate in terms of operation under the influence, impairment is so confusing and speculative as to form and the basis to grant the State's motion… Clearly expert testimony as to the issues presented in this case is necessary to explain the significance of the toxicology report because its significance, that is, what does it mean? It is beyond the ken of the average juror. Such an interpretation would require scientific, medical, or forensic knowledge outside that possessed by the ordinary juror.

A-4243-17T1

During the trial, defendant raised the issue again, and the judge conducted two hearings at which two State experts testified that the toxicology report required expert interpretation. This was so because, in the uncontradicted opinion of the State's experts, metabolites are "not active." Thus, while the presence of a metabolite in a victim suggests past use of a drug, it does not mean that the victim was affected in any way by the drug at the time of an accident. Accordingly, the judge again denied defendant's motion to introduce the report in the absence of any expert testimony to explain it to the jury.

N.J.R.E. 404(b) states:

> [e]xcept as otherwise provided by Rule 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

When the State proffers 404(b) evidence, a four-pronged analysis, outlined in State v. Cofield, must take place. 127 N.J. 328, 338 (1992). However, "[w]hen a person charged with a criminal offense seeks to use other-crimes evidence defensively, the Cofield standard does not govern because 'an accused is entitled to advance in his defense any evidence which may rationally

tend to refute his guilt or buttress his innocence of the charge made.'" State v. Weaver, 219 N.J. 131, 150 (2014) (citing State v. Garfole, 76 N.J. 445, 453 (1978)).

Therefore, when it is the defendant "who 'offers that kind of proof exculpatorily . . . simple relevance to guilt or innocence" is the deciding factor for admissibility. Ibid. (citing Garfole, 76 N.J. at 452-53). Evidence is relevant where there is a "logical connection between the proffered evidence and a fact in issue, i.e., whether the thing sought to be established is more logical with the evidence than without it." State v. Hutchins, 241 N.J. Super. 353, 358 (App. Div. 1990).

Despite this more relaxed standard, however, "trial courts must still determine that the probative value of the evidence is not substantially outweighed by any of the Rule 403 factors, which are 'undue prejudice, confusion of issues, or misleading the jury,' and 'undue delay, waste of time, or needless presentation of cumulative evidence.'" Weaver, 219 N.J. at 151. "This determination is highly discretionary." Ibid.; see State v. Cook, 179 N.J. 533, 568-69 (2004) (where the court found that although the other-crimes evidence was relevant, its probative value was "minimal" because there was "nothing distinctive to tie" a sexual assault with a non-sexual abduction).

A-4243-17T1

Applying these principles, we discern no basis for disturbing the judge's decision to bar the admission of the victim's toxicology report. It is well established that "[a]lthough jurors may draw rational inferences from the evidence, they are not permitted to speculate or connect the dots on mere surmise." State v. Fortin, 189 N.J. 579, 596 (2007). Thus, "New Jersey courts have required expert testimony to explain complex matters that would fall beyond the ken of the ordinary juror." Ibid.

Here, the uncontradicted expert testimony presented on the science surrounding metabolites clearly established that the mere presence of metabolites of marijuana and cocaine in the victim's system simply indicated that the victim had consumed these substances at some unknown point prior to the accident. Therefore, without an expert available to "connect the dots," the admission of the toxicology report in evidence would not make it more or less likely that the victim was under the influence of either drug when the accident occurred. Thus, there was an ample basis in the record to support the judge's determination that the relevance of the report was "beyond the ken of the ordinary juror" in the absence of any explanatory expert testimony. Accordingly, the judge did not abuse his discretion by granting the State's motion to bar the admission of the report at trial.

IV.

In Point III, defendant argues that the trial judge improperly informed the jury that he had previously ruled on a <u>Miranda</u>[1] issue. However, we conclude that any error in doing so was harmless under the circumstances of this case because the judge never told the jury how he ruled on that application, and he immediately provided the jury with a strong cautionary instruction not to speculate about what the ruling might have been.

In response to defendant's cross-examination, Trooper Mucksavage acknowledged that defendant and Bradbury were not free to leave while they were on the highway waiting for the emergency medical helicopter to arrive, and that the trooper continued to speak to them during that period. Defense counsel followed up by stating, "[a]nd that's before you read them their <u>Miranda</u>, correct?" The State objected to this question and the judge held a sidebar conference outside the presence of the jury. The judge sustained the State's objection after determining that the roadside questioning did not trigger the need to provide defendant and her husband with <u>Miranda</u> warnings.

Before going back on the record before the jury, the parties and the judge discussed how best to inform the jury that the State's objection had been

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

 A-4243-17T1

sustained.  After taking a recess, the judge stated he would simply tell the jury that the objection had been sustained without any further explanation.

When the jury returned, the judge told defense counsel he could resume questioning the trooper and added that the State's objection had been sustained. A juror then interjected and asked, "[c]ould you remind me what the State's objection was?"  The judge responded:

> The [S]tate objected to the question that [defense counsel] posed as to the timing of the so-called <u>Miranda</u> warnings.
>
> . . . .
>
> Now you've heard Trooper Mucksavage testify that he's testified on a couple other occasions, all right?  This case has been the subject of pretrial hearings and pretrial motions before this Court, and other proceedings, okay?  And things like <u>Miranda</u> have been adjudicated by me.  Thus, I sustained the objection.
>
> But I tell you that about the other proceedings so that you don't speculate about that and say, wait a minute, what do you mean you've testified before?  What's going on here?  What happened with the – this, like many, many criminal cases, is subject to what we call pretrial motion practice.  And in many instances, in order for the [j]udge to decide legal issues in pretrial motion practice, I have to have testimonial hearings and other proceedings, and I do.
>
> Okay, so this is tabula rasa, a blank slate, it's a brand new case, okay?  So you're not to speculate as to when, why, what the result was, or anything else that

21

happened in this matter except on December 10th – December 21, 2010, as presented to you in this courtroom in this trial.

The judge then asked the parties if they had any objections to that explanation. Defense counsel did not object to the instruction and, at sidebar, proceeded to address an unrelated matter.

In State v. Hampton, the Court held that once a trial judge makes a determination that a statement is admissible under Miranda, the jury must then determine if the statement is true without being informed of the court's prior decision. 61 N.J. 250, 272 (1972). The Hampton rule was codified in N.J.R.E. 104(c)(2), which states that:

> Where by virtue of any rule of law a judge is required in a criminal action to make a preliminary determination as to the admissibility of a statement by the defendant, the judge shall hear and determine the question of its admissibility out of the presence of the jury . . . If the judge admits the statement the jury shall not be informed of the finding that the statement is admissible but shall be instructed to disregard the statement if it finds that it is not credible.

"[T]he judge cannot tell the jury anything that would preempt its fact-finding function." State v. Ridout, 299 N.J. Super. 233, 239 (App. Div. 1997). If the trial court is permitted to tell the jury about its holdings on pretrial motions regarding the admissibility of evidence, "such an advisory obviously influences,

and improperly so, the jury's independent consideration of the same circumstances for purposes of making its credibility finding." Id. at 240.

Here, the judge did not need to mention the fact that a pre-trial motion was filed concerning a Miranda issue in responding to the juror's question. However, the judge never told the jury how he decided that issue and, therefore, never divulged whether the statement was determined to be admissible or inadmissible.

Moreover, even if the judge made a mistake in referring to a prior Miranda motion, he immediately corrected that misstep by giving the jury a very forceful curative instruction that they were not to speculate about "when, why, what the result was, or anything else that happened in this matter except for" what happened on the date of the accident. Defendant did not object to this instruction. "If the defendant does not object to the [curative instruction] at the time it is given, there is a presumption that the [instruction] was not error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012). In addition, we must presume that the jurors followed the judge's clear instruction "without cavil or question." State v. Manley, 54 N.J. 259, 270 (1969); see also Loftin, 146 N.J. 367.

Under these circumstances, we reject defendant's contentions on this point.

### V.

Finally, defendant argues in Point IV that the cumulative prejudice of the errors she raises deprived her of a fair trial. Having rejected defendant's argument that any reversible error occurred during her trial, we also reject her cumulative error argument.

### VI.

In sum, we affirm defendant's conviction and sentence.[2]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] As for the balance of any of defendant's arguments not expressly discussed above, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

24

A-4243-17T1